**CONTINENTAL CASUALTY COMPANY, Appellant,**

v.

**Gloria G. COLE, personal representative of the estate of Alan Y. Cole, et al.**

**CONTINENTAL CASUALTY COMPANY**

v.

**Gloria G. COLE, personal representative of the estate of Alan Y. Cole, et al., Appellants.**

Nos. 85–5871, 85–5888.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1986.

Decided Jan. 20, 1987.

William J. Carter, Washington, D.C., with whom Lawrence E. Carr, Jr., Washington, D.C., was on the brief for Continental Casualty Company, appellant in No. 85–5871 and cross-appellee in No. 85–5888.

J. Roy Thompson, Jr., Washington, D.C., with whom Thomas H. McGrail, Washington, D.C., was on the brief for Gloria G. Cole, et al., appellees in No. 85–5871 and cross-appellants in No. 85–5888.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and LEIGHTON,* Senior District Judge.

MIKVA, Circuit Judge:

The instant appeal and cross-appeal, arising under the laws of the District of Columbia, involve claims by an insured law firm, Cole & Groner ("C & G"), that its insurer, Continental Casualty Co. ("Continental"), had a duty to defend it in two

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d).

separate but closely related actions. Both actions for which C & G sought assistance were brought by another attorney, Earl Berger, who alleged that C & G had breached an agreement concerning a case that the law firm had handled for one of his clients.

The first action was a traditional suit seeking damages. We affirm the district court's finding that Continental had a duty to defend C & G in this action. The second action was less conventional. Berger sought to vacate the remand of the case he had turned over to C & G. Although Berger made virtually the same allegations of wrong-doing against C & G that he had made in the first action, the district court found that Continental had no duty to defend. For the reasons stated below, we reverse this portion of the district court's decision.

## I. BACKGROUND

### A. *Facts*

Mr. Earl Berger, who though not a party to this appeal figures prominently in the controversy, represented a group of overseas teachers in a longstanding pay dispute with their employer, the United States government. In 1970, Berger and C & G entered into a contract that required C & G to prosecute a suit on behalf of the teachers, to obtain Berger's consent to any proposed settlement of the suit, and to share with Berger any attorneys' fees ultimately awarded as a result of their joint representation of the plaintiffs. C & G prosecuted a suit, *March v. United States*, No. 3437–70, (D.D.C. June 30, 1975) ("*March*"), and the court entered a judgment which was partially in favor of both parties. On appeal, this court affirmed the judgment in part and reversed and remanded it in part. *March v. United States*, 506 F.2d 1306 (D.C.Cir.1974).

The parties thereafter reached a settlement, which the district court approved. *March, supra,* No. 3437–70, slip op. at 4–8 (D.D.C. June 30, 1975). At the same time, the court awarded attorneys' fees to C & G, calculated at 2% of the gross recovery of each plaintiff. *Id.* at 13. The court also stated that it would "retain jurisdiction over this matter" in order to implement its judgment, resolve any disputes, and consider any motions or other matters put before it. *Id.* at 15. The court retained this jurisdiction until May 18, 1983.

C & G did not obtain Berger's consent to the settlement and did not share the fees it received with him. In 1978, Berger sued C & G (*Berger v. Cole*, No. 78–1066 (D.D.C. 1980) ("*Berger*")), alleging breach of contract, breach of fiduciary duty, and conversion, and seeking compensatory and punitive damages. C & G requested a defense from Continental, but Continental refused, claiming that Berger's allegations were outside of the scope of the policy it had issued to C & G.

Meanwhile, in late 1980, Berger opened another front in his battle against C & G by filing a motion to vacate the remand in the *March* case. In his moving papers and supporting documents, he essentially repeated the allegations he had made against C & G in *Berger* (including charges of breach of contract, breach of fiduciary duty, and conversion). He asserted entitlement to both compensatory and punitive damages. C & G notified Continental of the *March* action and requested a defense, but Continental again refused, claiming that the allegations were not within the scope of coverage. Eventually, the district court denied Berger's motion to vacate the remand. Berger appealed the denial to this court (673 F.2d 550 (D.C.Cir.1982)), requested a rehearing *en banc*, petitioned to the Supreme Court for a writ of certiorari (457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982)) and for a rehearing of the denial of a writ of certiorari (458 U.S. 1132, 103 S.Ct. 17, 73 L.Ed.2d 1403 (1982)), all without success. C & G opposed Berger at each juncture, without assistance from Continental.

In 1979, Continental filed suit seeking a declaratory judgment on the issue of its duty to defend C & G in the *Berger* litigation. C & G later cross-claimed for a de-

claratory judgment on the issue of Continental's duty to defend it in *March*. Both parties moved for summary judgment on both issues. The district court found a duty to defend in *Berger* but no duty to defend in *March,* and entered summary judgment accordingly.

## B. *The Legal Standard*

 Under District of Columbia law, the insurer's duty to defend hinges on the allegations against the insured. If the complaint states a cause of action within the coverage of the policy, the insurance company must defend. *Boyle v. National Casualty Co.,* 84 A.2d 614, 615–16 (D.C. 1951). Any doubt as to whether the cause of action falls within the terms of the policy must be resolved in the insured's favor. *Id.* Furthermore, it is standard insurance contract doctrine that ambiguous policy language should be construed in favor of the insured wherever reasonable. 2 COUCH ON INSURANCE § 15:74 (2d ed. 1984). We accordingly compare the contract language with the allegations made against C & G to see if those allegations fall within the coverage.

## C. *The Terms of the Policy*

The insurance policy in question required Continental to defend "any suit against the insured seeking damages which are payable under the terms of this policy ... even if any of the allegations of the suit are groundless, false, or fraudulent." The policy covered "damages arising from the performance of professional services for others in the insured's capacity as a lawyer," but only if such damages resulted from an "error, negligent omission or negligent act of the insured."

The policy specifically excluded coverage for two types of damages: those arising from any "dishonest, fraudulent, criminal, or malicious act or omission of an insured" and those resulting from any "error, negligent omission or negligent act occurring while performing professional services for a business enterprise" owned, operated, or controlled by an insured or in which an insured is a partner.

## II. ANALYSIS

### A. *Duty to defend in* Berger

Berger's complaint against C & G in the *Berger* suit included claims for breach of contract, breach of fiduciary duty, and conversion. The two counts for breach of contract alleged that C & G had breached its agreement with Berger by failing to obtain his consent to the proposed settlement of *March* and by refusing to share with him the attorneys' fees that it had received in *March.* In his breach of fiduciary duty count, Berger alleged that the contract created a joint venture, establishing a fiduciary relationship between Berger and C & G which imposed an absolute obligation on the law firm to pay to him one-half of the fees it received in *March,* which it failed and refused to do. The allegations in the conversion count were similar, except that Berger alleged additionally that C & G had converted to its own use the fees which it had received and which rightfully belonged to him. Both tort counts included allegations of malice and bad faith by C & G. Berger requested compensatory damages for the contract claims, and compensatory and punitive damages for the tort claims.

The sole issue is whether these allegations state a cause of action within the coverage of the policy described above. Continental advances four reasons why there was no coverage, all of which were rejected by the district court, and all of which we reject here.

Continental's initial argument is based on the language in the policy limiting coverage to damages arising from an "error, negligent omission or negligent act" of the insured. Continental asserts that the word "error" in this clause means "negligent error." Therefore, according to Continental, the policy covered only negligence, and because Berger, in Continental's estimation, did not allege negligence, the claim fell outside of the scope of the policy.

■ Continental's argument is without merit. The policy says error, *not* negligent error. An error is "a mistaken judgment or incorrect belief as to the existence or effect of matters of fact...." BLACK'S LAW DICTIONARY 487 (5th ed. 1979). This definition encompasses intentional, non-negligent acts like those associated with the breach of a contract. At the heart of all of Berger's allegations against C & G is his charge that they breached their contract with him. Therefore, because the policy covered all errors, not just negligent errors, and because a breach of contract is a covered error, we agree with the district court's conclusion that Berger's allegations fell within the "error, negligent omission and negligent act" language of the policy.

■ Continental's second argument relies on the policy's limitation to damages arising from the "performance of professional services for others in the insured's capacity as a lawyer." Continental offers two lines of reasoning based on this clause. First, it urges that "for others" actually means "for clients" and that because Berger was not a client of C & G, there was no coverage. This interpretation is untenable. Clear and unambiguous language should be construed according to its everyday meaning, and the language in question here is as unambiguous as contract language can be. Furthermore, general insurance law principles compel an interpretation of ambiguous policy language in favor of the insured, not the insurer. Thus, even if we were to agree that the phrase "for others" is ambiguous, we could not adopt Continental's restrictive construction.

■ Continental's other line of reasoning is that Berger's allegations did not relate to C & G's performance of professional services, but rather that they arose from a breach of contract. We do not find this argument persuasive. The assumption underlying this argument is that performance under a contract and the performance of professional legal services are mutually exclusive. This assumption is flawed. While there are some contractual relationships that clearly do not involve the performance

of professional services (Continental mentions several, including the relationship between a law firm and its employees), other contractual relationships obviously do relate to such performance. Virtually every attorney-client relationship is contractual in nature. Therefore, the focus should not be on whether C & G was performing under a contract, but rather on which of C & G's actions caused the alleged damages. It was C & G's activities while functioning *as attorney* in *March*—specifically, its settlement of the case and its acceptance of attorneys' fees—that gave rise to Berger's claims. Thus, C & G was performing professional legal services, and it was performing those services for others, including Berger and the *March* plaintiffs, when the alleged damages arose. Consequently, Continental cannot avoid coverage based on this portion of the policy.

Continental's third argument looks to the exclusion from coverage for damages arising from professional services for a business enterprise owned, controlled, or operated by the insured or in which the insured is a partner. Continental urges that, because all of Berger's allegations related to a "business enterprise" whose partners were C & G and Berger and which was controlled and operated by C & G, the claims fall within the exclusion and no coverage is due.

■ This argument depends on a very loose construction of the term "business enterprise"—one that encompasses any instance in which an attorney and another party jointly pursue gain or profit, and over which the attorney has some control. The district court did not agree with Continental's interpretation, finding that this clause was intended to prevent an attorney from being able to sue himself for professional errors that he committed while performing professional services for a business that he owned or controlled. This interpretation is certainly reasonable. The term "business enterprise" must mean more than Continental suggests, because Continental's definition is broad enough to include virtually any attorney-client rela-

tionship. For example, a contingent fee agreement in a personal injury case could easily be called a "business enterprise" under Continental's definition: the attorney is a "partner" in the enterprise, and he manages and controls it for the mutual benefit of both parties. Given the need to construe ambiguous terms in favor of the insured, as well as the unreasonableness of Continental's all-encompassing construction, we adopt the interpretation provided by the district court and conclude that Berger's claims were not excluded by this clause.

 Continental's final argument is that the policy's exclusion from coverage for damages arising from "dishonest, fraudulent, criminal or malicious" acts of the insured absolves it of a duty to defend because the substance of Berger's entire complaint was that C & G had acted willfully, maliciously, and fraudulently. This argument is without merit. Although Berger's tort claims included allegations of malice, "[the insurer] cannot refuse to defend an otherwise appropriate complaint because of some language in the complaint which may be merely 'puffing' and which scrutiny reveals is not essential to the complaint." *Sachs v. St. Paul Fire and Marine Insurance Co.,* 303 F.Supp. 1339, 1341 (D.D.C.1969). *See also Donnelly v. Transportation Insurance Co.,* 589 F.2d 761, 768–69 (4th Cir.1978) (applying District of Columbia law). Berger's allegations of malice were not essential to recovery and appear to have been included only to support his demand for punitive damages. Thus, the malice exclusion does not preclude coverage for Berger's claims. We find that the district court was correct in holding that Continental had a duty to defend C & G in *Berger v. Cole.*

### B. *Duty to defend in* March

In his motion to vacate the remand in *March* and in his supporting documents, Berger essentially repeated the allegations he had made against C & G in *Berger v. Cole,* and he again demanded both compensatory and punitive damages from C & G.

A sampling of his sundry charges and allegations include: that C & G had effectively rescinded the contract; that he was entitled to both compensatory and punitive damages because of C & G's allegedly malicious conversion of his property; that C & G had converted $1,800,000 of his money to its use, contrary to its fiduciary obligations; that C & G had "otherwise inflicted damage" on him; and that C & G should be punished in the amount of $2,310,000. The district court found that Continental was under no duty to defend C & G in these proceedings.

We begin our analysis by paraphrasing the pertinent policy language. Under the defense clause, the duty to defend arises (1) if there is a suit against the insured (even if the allegations are groundless, fraudulent or false), and (2) if the suit is seeking damages payable under the terms of the policy.

The district court based its finding of no duty to defend on its conclusion that the first condition was not satisfied. In making this determination, the court relied on two factors that it believed demonstrated that there was no "suit against the insured": the fact that C & G was not a "party" to the *March* litigation and the fact that, in its view, an award of damages against C & G in the context of *March* would have been impossible. We disagree with the district court's reasoning.

 First, in order for there to be a "suit against the insured," the insured need not be an actual party to a suit. Courts have often found a duty to defend in instances in which the insured was not party to an action. *See, e.g., Clarke v. Fidelity and Casualty Co.,* 55 Misc.2d 327, 285 N.Y.S.2d 503 (1967) (holding that there was a duty to defend when the insured was "vouched-in" by a defendant, even though the insured was not a party to the suit); *Madawick Contracting Co. v. Travelers Insurance Co.,* 307 N.Y. 111, 120 N.E.2d 520 (1954) (holding that there was a duty to defend when the insured was brought into arbitration but no suit was filed); *Alderman v. Hanover Insurance Group,* 169

Conn. 603, 363 A.2d 1102 (1975) (holding that a duty to defend clause required the insurer to pay expenses incurred by the insured in a pre-suit settlement when a suit was threatened but not filed); *Walters v. American Insurance Co.*, 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960) (holding that when the insured settled before suit was filed, the defense clause required the insurer to cover the costs of the settlement).

Furthermore, it is the character of the proceedings in which the claim for damages against the insured is made, not the perceived impossibility of an ultimate award of damages, that determines whether there is a "suit against the insured." The defense clause itself, by requiring a defense "even if any of the allegations of the suit are groundless, false, or fraudulent," explicitly contemplates a defense for suits having little or no chance of success. The main purpose of the defense clause and the "groundless, false, and fraudulent allegations" language is to shift to the insurer the burden of defending against any and all attempts to assess liability against the insured which are based on covered activities. To follow the district court's reasoning would, in those instances in which an ultimate award of damages appears unlikely, place the insured in the difficult position of having to choose between two unappealing alternatives: pay for its own defense to protect against the possibility, no matter how remote, that damages might be awarded; or sit idle and do nothing in uneasy reliance on the insurer's promises that damages cannot possibly be awarded. The insured, who has paid for coverage, should not be required to make this choice. So long as an action can be characterized as a suit against the insured seeking damages payable under the terms of the policy, the insurer must step forward to defend.

Relatively few courts have addressed the "suit against the insured" issue. Most duty to defend cases have involved traditional plaintiff versus defendant lawsuits. A handful of decisions, however, have dealt with unorthodox attempts to hold insured

parties liable. *See Clarke, supra,* 55 Misc.2d 327, 285 N.Y.S.2d 503; *Madawick Contracting Co., supra,* 307 N.Y. 111, 120 N.E.2d 520; *Simon v. Maryland Casualty Co.,* 353 F.2d 608 (5th Cir.1965).

The case closest to this one is *Clarke,* in which the state hired engineers who later performed negligently, injuring a third party. The injured party sued the state for damages, and the state "vouched-in" the engineers. (Vouching-in is a process whereby a civil defendant notifies another that suit is pending against the defendant and that, if liability is found, the defendant will look to the vouchee for indemnity.) The engineers notified their insurer of the vouching-in, but the insurer refused to defend.

In the engineers' action against their insurer, the court found that there was a duty to defend. In response to the insurer's argument that there could be no "suit against the insured" because the vouching-in process was of questionable legal validity, the court stated that its use

> would not ... make the lay (or even the legally educated) recipient of the notice any the more secure were he not to duly respond to it or properly to ignore it. Nor would that make him any the less proceeded against by way of the juridical process generically defined in the insurance contract as a "suit."

285 N.Y.S.2d at 510.

Thus, *Clarke* focused on the substance of the action against the insured rather than on its form, recognizing that an insured who is being "proceeded against," albeit in an unorthodox fashion, is no less entitled to a defense than his insured contemporaries who are legally attacked in a more conventional manner. This view takes into account the legitimate and reasonable expectations of the insured, who would neither perceive the artificial distinction between a traditional lawsuit seeking damages and some other legal attempt to achieve the same result, nor anticipate that such a distinction, if found, would make any difference so long as he was legally

threatened because of activities for which he was covered.

In the instant case, Berger charged C & G with wrongdoing in its behavior before the *March* court and demanded that the court award him damages against C & G. Berger in fact served interrogatories on "Defendants Alan Y. Cole and Issac N. Groner." Record Excerpts for Cross-Appellants, Cole & Groner, at 24. Although Berger was proceeding by means of a motion to vacate the remand, the thrust of his demands and actions was that he wanted the district court to render judgment against C & G for its conduct in *March*. Both he and C & G, as attorneys for plaintiffs in *March*, were before the court and subject to its authority and supervision. The *March* court was in a position to consider and decide the issues raised by Berger's charges and claims against C & G because it had explicitly retained jurisdiction "over this matter for the resolution of any disputes...." *March, supra,* No. 3437–70, slip op. at 15 (D.D.C. June 30, 1975).

 Thus, Berger's action had all the trappings of a suit against the insured, including adversaries who were before the court as well as a dispute over which the court presumably had authority because of its retention of jurisdiction. We conclude that in these peculiar circumstances, Berger's motion to vacate the remand constituted a "suit against the insured."

The second and final element necessary to trigger the duty to defend is a demand for damages payable under the terms of the policy. First, it is apparent that Berger was seeking damages. As noted earlier, among the assorted papers that Berger filed during his attempts to reopen *March* were allegations of C & G's misconduct before the court. Berger variously alleged that C & G had practiced fraud on the court, that it had deprived both the class plaintiffs and Berger of their entitlements, that it had no right to any compensation in the case, and that Berger was entitled to both compensatory and punitive damages. He further demanded that C & G be pun-

ished to the extent of $2,310,000. Although these allegations, charges, and demands were spread through several different documents that Berger filed over a period of several months, the same general theme ran throughout everything that he submitted to the court: that C & G had deprived him of what was rightfully his and that it should therefore be made to account to him for its actions. At the very least, even if the court had only granted Berger's initial motion to vacate, the court could have and would have ordered C & G to return the fees that had been paid to it as a result of the order's having been vacated.

 As for whether the sought-after damages were payable under the terms of the policy, we need look no further than our holding above concerning the duty to defend in *Berger v. Cole.* Berger was making essentially the same allegations in *March* that he had made in that case—i.e., conversion, breach of fiduciary duty, and breach of contract—and both we and the district court have agreed that the allegations in that case fell squarely within the ambit of coverage. If C & G had been obliged to pay back the fees previously paid to it, that too would have been within the ambit of the policy's coverage. There is no reason for a different result here. Berger's claims here, as in *Berger v. Cole,* related directly and indisputably to C & G's performance of professional legal services for others, and therefore were within the scope of the policy.

### III. CONCLUSION

For the reasons stated above, we affirm the decision of the district court finding that Continental had a duty to defend C & G in *Berger v. Cole.* We reverse the district court's decision that Continental had no obligation to defend C & G in the relevant proceedings in *March v. United States* and remand for further proceedings consistent with this opinion.

WALD, Chief Judge, concurring:

I concur in the panel's judgment that Continental Casualty was required to de-

fend Cole & Groner in the *March* litigation on the additional ground that the motion to vacate was clearly collateral to the main *Berger* litigation. In short, Berger was attempting to insure that the attorneys' fees provided for in the settlement were not given over to Cole & Groner until his main suit for damages was decided and that the *March* award should in no way be used as collateral estoppel in his pending suit against Cole & Groner. Record Excerpts for Cross-Appellants, Cole & Groner, at 10–23. Thus, there is a duty to defend here just as there would be where plaintiff seeks an attachment as collateral relief to a main action in which the insurer's duty to defend is unequivocal.