**EMPLOYERS REINSURANCE CORPORATION, Plaintiff,**

v.

**MARTIN, GORDON & JONES, INC., Ollie Demarre "Dee" Jones, and Calvin Jeffery McGee, Defendants.**

Civ.A.No. J90–0506(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 26, 1991.

Clifford K. Bailey, III, Wise Carter Child Caraway, Jackson, Miss., for plaintiff.

Thomas C. Gerity, Watkins and Eager, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Plaintiff's Motion for Summary Judgment. Defendants have filed a Cross–Motion for Summary Judgment. All parties have responded to the Motions. The Court, having considered the Motions and Responses, together with memoranda of authorities and attachments thereto, now renders the following findings of fact and conclusions of law.

### I. FACTS AND PROCEDURAL HISTORY

In February and April of 1989, Fox–Everett, Inc. ("Fox–Everett"), an insurance agency located in Jackson, Mississippi, was contacted by Elam & Jones Consulting, Inc. ("Elam & Jones"), a Jackson, Mississippi

insurance consulting firm, concerning insurance coverage for two large insurance accounts referred to as the Coliseum Properties Account and the Pearl River Account. Elam & Jones requested that Fox–Everett submit proposals for insurance coverage on the two accounts. Elam & Jones employees Ollie Demarre "Dee" Jones and Calvin Jeffery McGee were involved on Elam & Jones behalf in these attempts to secure insurance proposals from Fox–Everett. Fox–Everett submitted insurance coverage proposals on the two projects and were ultimately awarded the accounts. The coverage for these accounts was placed with The Home Insurance Company ("Home") and with United States Fidelity & Guaranty Company ("U.S.F. & G."). Together, the two accounts resulted in commissions to Fox–Everett of approximately $52,000.00 for the initial year of coverage.

In December, 1989, Jones contacted Fox–Everett and requested pricing information on the renewal of the Coliseum Properties Account. Accordingly, representatives of Fox–Everett met with Jones and McGee on April 13, 1990, to discuss the pricing information. It is asserted that Jones and McGee indicated to the Fox–Everett representatives that the pricing information was acceptable and would be transmitted to the insured for approval. It is further asserted that Jones and McGee authorized Fox–Everett to prepare binders and invoices for renewal of the insurance coverage.

On April 24, 1990, Fox–Everett received a certified letter from Home advising that Home had received a letter on April 20, 1990, appointing Dee Jones at Martin & Gordon, Inc. ("Martin & Gordon"), a Jackson, Mississippi insurance agency, as agent on the Coliseum Properties Account. On May 12, 1990, Fox–Everett received a similar letter from Home and U.S.F. & G. regarding the Pearl River Account. It is alleged by Fox–Everett that these letters were the result of agreements reached between Jones, McGee, and Martin & Gordon on or about March 1, 1990, whereby Jones and McGee contracted to become soliciting and producing agents for Martin & Gordon. Fox–Everett has further alleged that Jones

and McGee failed to advise Fox–Everett of these arrangements at any time prior to its receipt of the April 24 and May 12, 1990, letters and that, in fact, Jones and McGee had represented to Fox–Everett as late as April 13, 1990, that they were working on behalf of Elam & Jones as insurance consultants on the Coliseum Properties Account and that Fox–Everett would continue as agent on that account for the upcoming year.

At some point subsequent to May 12, 1990, Fox–Everett advised Martin & Gordon of its concerns regarding the Coliseum Properties Account and the Pearl River Account. Martin & Gordon thereafter advised Employers Reinsurance Corporation ("Employers"), who had issued professional liability policy number PAL 45802 to Martin & Gordon, of the Fox–Everett claims. Terry A. Cashman of Employers acknowledged notice of the claims on July 3, 1990. In the letter of acknowledgement, Cashman asked to be kept closely advised of any developments in the matter.

By letter dated August 7, 1990, attorneys for Jones, McGee, and Martin & Gordon requested that Employers either accept their request for defense and indemnity under the professional liability policy or allow them to attempt settlement of the claims without prejudicing their rights under the professional liability policy.

On August 14, 1990, Employers advised Jones, McGee, and Martin & Gordon that it had retained counsel to defend them in the lawsuit that Fox–Everett would likely file. Employers further stated that it was reserving its rights under the policy, specifically asserting that it was Employers' position that no coverage existed under the professional liability policy. Accordingly, Employers asked Martin & Gordon to consent to a defense under a reservation of rights.

On August 15, 1990, Jones, McGee, and Martin & Gordon advised Employers that they would not accept a defense under reservation of rights. Employers was further advised that, because of its refusal to consent to settlement negotiations between Fox–Everett and Jones, McGee, and Martin

& Gordon, Fox–Everett had been advised that no settlement would be forthcoming before the August 16, 1990, deadline that Fox–Everett had imposed.

On August 28, 1990, Fox–Everett filed a Complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi against Jones, McGee, Martin & Gordon, Elam & Jones, and Jonathan Eric Elam. In that Complaint, Fox–Everett asserted claims against Jones, McGee, and Martin & Gordon for: (1) fraud; (2) tortious interference with contract; (3) tortious interference with business and contractual relations; (4) conversion and interference with business relations; (5) conspiracy; and (6) unjust enrichment. Several of these claims were also asserted against Defendants Elam & Jones and Jonathan Eric Elam. In addition, the Complaint asserted a claim for negligence that was directed only at defendants Elam & Jones and Jonathan Eric Elam. An Answer to the Complaint was filed on behalf of defendants Jones, McGee, and Martin & Gordon by counsel that had been retained by Employers.

On October 2, 1990, Employers filed the instant action. In the Complaint, Employers sought a judgment declaring that it had no duty to defend or indemnify Jones, McGee, and/or Martin & Gordon[1] in the Fox–Everett lawsuit and, further, that it could withdraw from the defense of that matter. In addition, Employers sought an award of costs and attorney's fees associated with its suit for declaratory judgment.

Defendants Jones, McGee, and Martin & Gordon answered Employers' Complaint and asserted a Counterclaim on the bases that the Fox–Everett lawsuit was within the scope of coverage under the professional liability policy and that Employers was estopped or had waived its right to withdraw from the Fox–Everett lawsuit.

On January 11, 1991, Employers filed the instant Motion for Summary Judgment, asserting that, because of the intentional, dishonest, fraudulent, and malicious nature of the conduct upon which the claims asserted by Fox–Everett against Jones, McGee, and Martin & Gordon are based, such conduct falls outside of the coverage provided under the professional liability policy Employers issued to Martin & Gordon and its employees. In response, Defendants assert that fact issues remain as to the issue of coverage under the policy. Defendants have asserted by way of a Cross–Motion for Summary Judgment, however, that coverage should be required as a matter of law under a theory of waiver or estoppel, since Defendants never authorized Employers to proceed in the defense of the Fox–Everett lawsuit under a reservation of rights.

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Ken-*

---

**1.** At the time that Employers' Complaint was filed, Martin & Gordon, Inc. had changed its corporate name to Martin, Gordon, & Jones, Inc. This Defendant will consistently be referred to as Martin & Gordon for purposes of clarity in this Opinion.

*nett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper merely where the court believes it unlikely that the opposing party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

 The party moving for summary judgment bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrates the absence of a genuine issue of fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant need not support the motion with materials that negate the opponent's claim. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to an absence of evidence to support the non-moving party's claim; the non-moving party must then designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

### B. Analysis

Two primary issues of law are presented by Plaintiff's Motion and Defendants' Cross–Motion for Summary Judgment: (1) whether Plaintiff has a duty to defend and indemnify Defendants in the Fox–Everett lawsuit under the professional liability policy it issued to Martin & Gordon; and (2) whether Plaintiff should be required, as a matter of law, to provide coverage under the professional liability policy to Defendants on the basis of waiver or estoppel.

#### (1) *Duty to defend and indemnify*

The professional liability policy issued by Employers to Martin & Gordon provides in relevant part:

### SECTION I

COVERAGE. [Employers] does hereby agree to pay on behalf of the Insured such losses ... sustained by the Insured by reason of liability imposed by law for damages caused by any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent, insurance agent or broker, and including activities as an insurance consultant or notary public, as respects claims first made against the insured during the policy period.

\* \* \* \* \* \*

### SECTION III

DEFENSE EXPENSES AND SUPPLEMENTARY PAYMENTS. With respect to such insurance as is afforded by this policy, [Employers] shall pay, in addition to the applicable limit of liability, provided the limit of liability has not been exhausted:

(a) all expenses incurred in the defense of any claim or suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such claim or suit is groundless, false, fraudulent, or for an amount less than the Insured's deductible[.]

\* \* \* \* \* \*

### SECTION VI

EXCLUSIONS. This policy does not apply to:

(a) any dishonest, fraudulent, criminal or malicious act....

Based on these provisions of the policy, Employers contends that the allegations raised by Fox–Everett in its lawsuit do not fall within the policy coverage for "any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable," and, indeed, are specifically excepted from coverage by the policy exclusion for "any dishonest, fraudulent, criminal or malicious act."

 The duty of an insurer to defend its insured against legal claims asserted by a third party is determined by the allegations pleaded in the third party's complaint. *Southern Farm Bureau Cas. Ins. v. Logan,* 238 Miss. 580, 119 So.2d 268, 271 (1960). However, it is the facts alleged, not the pleader's legal conclusions, that are

**1360**

relevant to the insurer's duty to defend. *Putman v. Insurance Co. of North America,* 673 F.Supp. 171, 176 (N.D.Miss.1987). "Only if the pleadings state facts 'bringing the injury within the coverage of the policy' must the insurer defend." *Foreman v. Continental Cas. Co.,* 770 F.2d 487, 489 (5th Cir.1985) *(citing Battisti v. Continental Cas. Co.,* 406 F.2d 1318, 1321 (5th Cir. 1969)).

■ The Complaint filed by Fox–Everett in its state court action alleges the following facts in support of the claims asserted against Jones, McGee, and Martin & Gordon:

COUNT I [FRAUD]: that Jones, McGee, Martin & Gordon, and other defendants knowingly and intentionally made false representations and misrepresentations to Fox–Everett concerning the Coliseum Properties Account with the intent of causing Fox–Everett to rely on such representations to its economic detriment.

COUNT II [TORTIOUS INTERFERENCE WITH CONTRACT]: that Jones, McGee, and Martin & Gordon tortiously interfered with the renewal contract existing between Fox–Everett and the two insurance accounts by intentionally inducing the accounts to execute agent of record letters in favor of Martin & Gordon.

COUNT III [TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS AND CONTRACTUAL RELATIONS]: that the existing business relationship between Fox–Everett and the accounts and the reasonable expectation that Fox–Everett held in continuing as agents for the accounts were tortiously interfered with by the intentional acts of McGee, Jones, and Martin & Gordon.

COUNT V [CONVERSION AND INTERFERENCE WITH BUSINESS RELATIONS]: that the best efforts, skill, knowledge, and trade secrets used by Fox–Everett in obtaining coverage for the accounts was converted by Jones, McGee, and Martin & Gordon for their own use.

COUNT VI [CONSPIRACY]: that Jones, McGee, and Martin & Gordon conspired to interfere with the contracts between Fox–Everett and the accounts, to convert commissions lawfully owed to Fox–Everett, and to commit fraud and conceal material facts from Fox–Everett.

COUNT VII [UNJUST ENRICHMENT]: that commissions lawfully owed to Fox–Everett are in the possession of Jones, McGee, and Martin & Gordon due to the intentional conduct of those parties.

Plaintiff asserts that, based on the facts alleged in the Fox–Everett Complaint, this Court must conclude that the Fox–Everett claims are grounded in allegations of deliberate, intentional acts by Jones, McGee, and Martin & Gordon and are not claims based upon mere negligent acts, errors, or omissions by those parties. Accordingly, Plaintiff contends that, as a matter of law, the Fox–Everett claims cannot fall within the limited coverage the policy provides for a merely "negligent act, error or omission," and are further excluded from coverage by the "dishonest, fraudulent, criminal or malicious act" exception to the policy.

Upon a review of legal authority cited by Plaintiff in support of its position, the Court concludes that, as a matter of law, no coverage is provided under the Employers professional liability policy for the alleged actions by Jones, McGee, and Martin & Gordon that form the underlying basis of the claims asserted in the Fox–Everett Complaint.

In *Correll v. Fireman's Fund Insurance Co.,* 505 So.2d 295 (Ala.1986), a complaint was filed against an insurance agent alleging forgery, embezzlement, intentional or wanton conversion, breach of contract, and outrageous conduct. The professional liability policy at issue covered claims for "any negligent act, error or omission" and specifically excluded coverage for "any fraudulent or criminal act or omission." *Correll,* 505 So.2d at 295–96. In holding that the insurer had no duty to defend the claims under the professional liability policy, the court noted that the language of the policy

makes it clear that Fireman's Fund was to provide coverage to Correll only in those suits in which a "claim" for negli-

gence is made. Further, Fireman's Fund is obligated to provide a defense only in those suits wherein a negligent act is "alleged." The insurance was not to apply to any claim made because of any "fraudulent or criminal act or omission of the insured."

It is clear from the record, as explained by the trial court, that the Creamers' claims against Correll charge only "intentional acts of forgery, embezzlement, intentional or wanton conversion, breach of contract, tortious bad faith, breach of contract and outrageous conduct." Therefore, under the express terms of the policy, the Creamers have stated no claim against Correll for which Fireman's Funds is obligated to provide either a defense or coverage.

*Id.* at 296–97.

Similarly, in *United States Fidelity & Guaranty Co. v. Fireman's Fund Insurance Co.*, 896 F.2d 200 (6th Cir.1990), a complaint was filed against an insurance agent alleging libel, defamation, tortious interference with prospective business and contractual relations, and violations of a deceptive trade practices statute. The professional liability policy at issue covered claims for "any negligent act, error, or omission" committed by the insurance agent in the conduct of his business. In holding that the insurer did not have an obligation to defend the claims in the complaint since they failed to allege any negligent act, error, or omission, the court stated:

> Since Fireman's Fund's policy "was neither a standard general liability policy ... [n]or was it one comprehensive enough to protect against all business vicissitudes," to hold that Fireman's Fund had a duty to defend against claims which were based on Naylon's intentional, malicious conduct "would be to create additional coverage beyond that which was bought and paid for."

*United States Fidelity & Guaranty Co.,* 896 F.2d at 203 (citations omitted).

Although the Mississippi Supreme Court has never construed a professional liability policy under circumstances similar to those presented here, the court has exhibited a tendency in most cases to construe policy language strictly so that coverage is not found under the policy provisions at issue. For example, in *Allstate Insurance Co. v. Moulton,* 464 So.2d 507 (Miss.1985), the court construed the provisions of a general liability policy to exclude coverage for intentional torts. *Moulton,* 464 So.2d at 510. In so holding, the court noted that its ruling was largely premised upon its view that words of an insurance contract should be given their normal meaning and should not be interpreted in a way that extended their use beyond that clearly intended in the policy. *Id.* Based on the reasoning of *Moulton* and similar Mississippi opinions, the Court concludes that the Mississippi court, if presented with the issues raised in the instant matter, would conclude that the facts asserted in the Fox–Everett Complaint allege intentional conduct on the part of Jones, McGee, and Martin & Gordon that falls outside of the coverage provided under the Employers policy for negligent acts, errors, and omissions, and is further expressly excluded from coverage under the fraud exception to the policy.

Defendants cite this Court to the decision in *Brooks, Tarlton, Gilbert, Douglas, & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358 (5th Cir.1987), in support of their contention that the underlying conduct at issue here does not fall outside of the terms of the professional liability policy. In *Brooks, Tarlton,* the court considered the issue of professional liability coverage for attorneys who were sued for breach of contract and for violations of deceptive trade practices provisions concerning a deed that had been executed under alleged conditions of fraud, duress, and undue influence. The policy at issue specifically excluded coverage for "dishonest, fraudulent, criminal or malicious act[s]." In determining that the policy did not exclude coverage under the facts of the case, the court distinguished actual and constructive fraud. Actual fraud, defined as fraud involving "dishonesty of purpose or intent to deceive," was excluded from coverage under the policy since it would in fact constitute a "dishonest, fraudulent, criminal or

malicious act." *Brooks, Tarlton,* 832 F.2d at 1369. However constructive fraud, defined as "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent," would not be excluded from coverage under the fraud exception. *Id.* at 1369–70. On this basis, Defendants in the instant matter assert that, because there have been no allegations of facts which constitute actual fraud as opposed to mere constructive fraud, coverage should be provided under the Employers policy. This Court does not agree. While the facts of the *Brooks, Tarlton* case may have been such as to place it within that category of circumstances under which fraud occurred as a result of the breach of a constructive legal or equitable duty, *see id.* at 1369, the pleadings in the instant case clearly demonstrate that the Fox–Everett claims are based upon allegations of willful acts undertaken by the Defendants with the intent to deceive and gain an unfair advantage over Fox–Everett. Such allegations clearly fall within the definition of actual fraud set forth in *Brooks, Tarlton* as a basis for denying coverage under a fraud exclusion to a professional liability policy.

Finally, Defendants rely on the case of *Continental Casualty Co. v. Cole,* 809 F.2d 891 (D.C.Cir.1987) to support their contention that the fraud exclusion is inapplicable in this matter. In *Cole,* the court held that, where coverage would otherwise be provided under the policy for specific negligent acts, allegations that those actions were also undertaken willfully and maliciously could not be used to exclude the claims from coverage.

> Continental's final argument is that the policy's exclusion from coverage for damages arising from "dishonest, fraudulent, criminal or malicious" acts of the insured absolves it of a duty to defend because the substance of Berger's entire complaint was that C & G had acted willfully, maliciously, and fraudulently.

> This argument is without merit. Although Berger's tort claims included allegations of malice, "[the insurer] cannot refuse to defend an otherwise appropriate complaint because of some language in the complaint which may be merely 'puffing' and which scrutiny reveals is not essential to the complaint."

*Cole,* 809 F.2d at 897 (citations omitted). The Court, however, does not find the reasoning of *Cole* to relieve Defendants of the effect of the fraud exclusion under the facts of the instant matter. *Cole* specifically considered allegations of willful, malicious conduct that were not necessary to support recovery on the underlying substantive claims, but rather were asserted only as a basis for recovery of punitive damages. *See id.* at 897. The Court notes that all claims asserted in the Fox–Everett Complaint require as an essential element of the cause of action proof of intentional or willful conduct. *See Liston v. Home Ins. Co.,* 659 F.Supp. 276, 280–81 (S.D.Miss. 1986) (intent is essential element of tortious interference with contract claim); *Galloway v. Travelers Ins. Co.,* 515 So.2d 678, 682–83 (Miss.1987) (intent is prima facie element of tortious interference with business and contractual relations claim); *Walker v. Brown,* 501 So.2d 358, 361 (Miss. 1987) (conversion is intentional tort claim); *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss.1985) (conspiracy requires showing of intentional conduct); *McMahon v. McMahon,* 247 Miss. 822, 157 So.2d 494, 501 (1963) (fraud requires showing of intentional misconduct). Fox–Everett's claim for unjust enrichment is likewise based upon the intentional conduct alleged in the other counts of the Complaint. Intentional conduct has thus been pleaded by Fox–Everett as a necessary element of the underlying claims, not merely as a basis for an award of punitive damages. Accordingly, the Court does not find the rationale expressed in *Cole* to alter its conclusion that coverage is barred by the fraud exclusion to the policy.[2]

---

**2.** An additional issue addressed in *Cole* was whether coverage could be provided for an intentional error under a policy which provided coverage for any "error, negligent omission and negligent act." In holding that such coverage was mandated, the court noted that the policy language itself expressly failed to limit coverage for errors to ones negligently made, thus sup-

Based upon the foregoing analysis, the Court concludes that no genuine issues of fact exist as to claims concerning a duty to defend and indemnify under the Employers professional liability policy and that Plaintiff is entitled to judgment on such claims as a matter of law.

### (2) *Waiver or Estoppel*

Defendants lastly argue that, even if Employers had no duty to provide a defense under the terms of the professional liability policy, it has proceeded with a defense in the Fox–Everett lawsuit to such an extent that it has now waived its rights or, alternatively, is estopped to withdraw as counsel in that proceeding. Additionally, Defendants assert a waiver or estoppel theory on the basis that Employers never secured the consent of Defendants to proceed with the defense of the Fox–Everett matter under a reservation of rights and that Employers failed to give its consent to efforts to settle the Fox–Everett claims before suit was filed.

■ As to the issue of liability coverage under the policy, the Court notes that the theories of waiver and estoppel cannot be used to extend policy coverage to subject matter outside of the coverage provided under the clear terms of the policy. *Fishel v. American Sec. Life Ins. Co.,* 835 F.2d 613, 615 (5th Cir.1988); *Employers Fire Ins. Co. v. Speed,* 242 Miss. 341, 133 So.2d 627, 629 (Miss.1961). Because dishonest, fraudulent, criminal, or malicious acts are clearly excluded from the subject matter covered under the policy, the Court finds that waiver or estoppel cannot be used to establish liability coverage for the claims asserted in the Fox–Everett Complaint.

■ As to the issue of defense expenses, the Court notes that it is well settled that an insurer is entitled to proceed with a defense under reservation of rights where a dispute as to liability coverage exists. *See Reliance Ins. Co. v. County Line Place, Inc.,* 692 F.Supp. 694, 698 (S.D.Miss. 1988); *Travelers Indemnity Co. v. Holi-*

*man,* 174 Miss. 220, 164 So. 36 (1935). Indeed, an insurer may proceed under a reservation of rights even where the insured has not agreed to such representation. The United States Court of Appeals for the Fifth Circuit stated the rule succinctly in *Duke v. Hoch,* 468 F.2d 973 (5th Cir.1972).

> There was no waiver arising from [the insurer's] failure to secure from its insureds agreements to the reservation of rights. The reservation of rights, utilized to enable an insurer to meet vigorously and with undivided loyalty its duty to defend, while preserving for another time its day in court to determine its obligation under the policy to pay for the insured's liability, is well recognized.

*Duke,* 468 F.2d at 983. Although no Mississippi case has directly addressed this issue, a majority of jurisdictions considering the issue have concurred with the reasoning of *Duke* and have held that consent of the insured is not a prerequisite to proceeding under a reservation of rights. This Court can find no reason, based on general Mississippi law regarding rights of an insured, to suggest that a different result would be reached by the Mississippi court if it were to directly consider the issue.

■ Aside from the issue of consent to a defense under reservation of rights, Defendants also assert that allowing Employers to withdraw from the defense of the Fox–Everett matter at this time would so prejudice the Defendants in that proceeding that it ought not be allowed as a matter of law. This Court notes that, as a general proposition, an insurer who has undertaken to defend a case for its insured may withdraw from the litigation only if it can do so without prejudicing its insured.

> [T]he fact that the insurer assumes the defense may give rise to a duty to continue with the defense and make the insurer liable for its withdrawal therefrom, though it would not have been liable if it had not assumed the defense in the first

porting the conclusion that any error fell within the confines of the policy. *Cole,* 809 F.2d at 896. The Court notes that no such conclusion is required here. The Employers policy at issue in

the instant matter expressly provides coverage for damages caused by "any *negligent* act, error or omission of the Insured" (emphasis added).

instance. And the general rule is that an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured. *Southern Farm Bureau Cas. Ins. Co. v. Logan,* 238 Miss. 580, 119 So.2d 268, 272 (1960). Upon a review of the facts presented in this case, however, the Court cannot conclude that Defendants have been prejudiced in any way by the previous conduct of Employers in the Fox–Everett matter. Specifically, this Court notes that Defendants have been aware at all points relevant to this controversy that Employers was defending the Fox–Everett matter under a reservation of rights. Indeed, even though Defendants refused to expressly agree to the reservation of rights, they impliedly accepted the terms of Employers' representation by turning the summons and complaint over to Employers' counsel when the Fox–Everett lawsuit was subsequently filed. The record contains no evidence to suggest that Defendants ever requested permission to select their own counsel to handle the Fox–Everett suit or otherwise challenged the counsel ·that Employers had selected to represent them. Finally, even though Defendants have raised the issue of Employers' failure to consent to settlement talks in this matter as a particular instance of past prejudice to Defendants' rights, the Court notes that Employers had no duty to consent to such activity where a genuine issue of coverage existed. *See Martin v. Travelers Indemnity Co.,* 450 F.2d 542, 552 (5th Cir.1971). Accordingly, the Court cannot characterize that particular event as an instance of prejudice to Defendants rights, since it truly represented only an attempt by Employers to preserve the rights it held by law.

With regard to allegations of future prejudice to Defendants rights if Employers are allowed to withdraw from the Fox–Everett matter at this time, Defendants have failed to place before the Court any specific evidence to suggest the exact manner in which prejudice in the Fox–Everett lawsuit would result if Employers' withdrawal was allowed. The Court cannot predicate a finding of prejudice upon the mere conclusory assertions of Defendants. Accordingly, the Court finds that no genuine issue of fact exists as to Employers duty to defend or indemnify Defendants under the professional liability policy at issue and that judgment should be entered for Employers as a matter of law.

Finally, the Court notes a matter of relief that was raised by Employers in its Complaint for Declaratory Relief. Employers has asked this Court to enter an order allowing it to withdraw from the defense of the Fox–Everett lawsuit. Although the Court notes that such a result is logically compelled by todays' ruling, the Court feels that the actual withdrawal of Employers' counsel from the Fox–Everett suit would best be handled by the state court in which that lawsuit was filed.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment be hereby granted and that judgment be entered in favor of Plaintiff declaring that Plaintiff has no duty under professional liability policy PAL 45802 to defend or indemnify Defendants in the Fox–Everett lawsuit.

IT IS FURTHER ORDERED that Defendants Cross–Motion for Summary Judgment is hereby denied.

SO ORDERED.