EDITH BROWN CLEMENT, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the Ace American Policy covers only employment-related claims and join in Parts I — III and V of the opinion. Because the Cowards’ Amended Complaint does not allege an “occurrence” triggering a duty to defend under the Acadia Policy, I dissent from the majority’s holding in Part IV that Acadia owes such a duty to HCSD.
I.
As the majority opinion correctly states, an occurrence is triggered only by accidental conduct. U.S. Fid. & Guar. Co. v. Omnibank, 812 So.2d 196, 201 (Miss.2002). The majority finds the requisite allegation of accidental conduct in the Amended Complaint’s assertion that Johnston “dropped M.L.C.” But the majority completely omits the context in which the purported drop is claimed. The relevant paragraph of the complaint states:
In or about the spring of 2008, and for the period of around one year, Louise Miley Johnston, a teacher at Gary Road Intermediate School, engaged in abusive behavior and other conduct including, but not limited to, physical and emotional abuse of M.L.C. For example, Ms. Johnston sprayed M.L.C. in the face with a can of Aerosol spray and dropped M.L.C. She also called M.L.C. a ‘bitch,’ threw a ball at M.L.C. hitting her in the face.... Ms. Johnston also grabbed M.L.C.’s face and told her, T hate you, you make me sick.’ ... The foregoing examples of abuse by Ms. Johnston against M.L.C. are not exhaustive.
Am. Compl. ¶ 9 (emphases added). The Cowards’ pled Johnston’s drop as an ex *395 ample of abuse along with other clearly intentional conduct. Read in context, the Amended Complaint does not allege an accidental drop but claims, as the district court found, that the drop was another act in a sequence of intentionally abusive behavior. See Farmland Mut. Ins. Co. v. Scruggs, 886 So.2d 714, 719 (Miss.2004) (no duty to defend where “[fjrom the face of [plaintiffs] complaint, only intentional torts are alleged” and where “[defendants’] pattern of conduct has been one of intentional acts.”). Under the majority’s decision, a defendant faced with factual allegations of intentional misconduct can simply suggest that the actions could have instead been the product of negligence and thus trigger an insurer’s duty to defend. This now-permissible reinterpretation of a plaintiffs allegations, even if contrary to the language of the complaint, effectively supersedes Mississippi law that an occurrence cannot result from intentional conduct.
The single reference to Johnston’s negligence (as opposed to Hinds County’s own negligence in failing to identify and prevent Johnston’s intentional behavior) in the Amended Complaint appears in Paragraph 13: “Upon information and belief, officials of the school and school district were aware of the negligence and physical and emotional abuse to which M.L.C. was subjected at the hands of Johnston.”[1] This conclusory use of the word “negligence” does not transform the character of the factual allegations of intentional conduct against Johnston into allegations of accidental conduct constituting an “occurrence.” “Negligence” is not a factual allegation, but a legal conclusion that cannot itself bring a complaint within the scope of an insurance policy’s coverage. See E. E.O.C. v. S. Pub. Co., 894 F.2d 785, 790-91 (5th Cir.1990) (“Under Mississippi’s ‘allegations of the complaint’ rule if the factual allegations of the complaint bring the action within coverage of the policy, the insurer has a duty to defend.” (emphasis added)); Emp’rs Reinsurance Corp. v. Martin, Gordon & Jones, Inc., 767 F. Supp. 1355, 1359-60 (S.D.Miss.1991) (“[I]t is the facts alleged, not the pleader’s legal conclusions, that are relevant to the insurer’s duty to defend.”).
But even if we ignore the fact that the Amended Complaint alleges only intentional abuse, the “negligent” drop would still not bring the complaint within the terms of the Acadia Policy. The Mississippi Supreme Court permits courts to look to evidence outside of the complaint to determine an insurer’s coverage obligations. See Auto. Ins. Co. of Hartford v. Lipscomb, 75 So.3d 557, 560 (Miss.2011). The drop referred to in the Amended Complaint was described by Larina Mason, another employee of the school district:
On 9/08/2008 an incident occurred when I asked for assistance to get [M.L.C.] out of her wheelchair and onto a mat on the floor. While I had my back turned putting on gloves, I heard a thud. When I turned around [M.L.C.] was lying on the floor on the mat. Kourtney (assistant in classroom) had transferred her without any help. She commented, “She’s alright. I’m not going to hurt my back bending over.” I did not see her drop [M.L.C.] on the mat, but by her *396 response and the look on Ms. Johnston’s face and the look on [M.L.CJs face, I know she didn’t transfer her appropriately.
Statement of Larina Mason ¶ 1 (emphases added). The majority concludes that Mason’s statement is “ambiguous” and engages in a tortured reading of the paragraph to cast uncertainty as to whom the pronouns “her” and “she” refer. This is unconvincing because Mason’s statement clearly explains that Kourtney — not Johnston — transferred M.L.C.[2] The next sentence states that “she” — Kourtney, the subject of the preceding sentence — declared that she would not “hurt [her] backing bending over.”[3] Mason then states that she “did not see her drop [M.L.C.] on the mat, but by her response and the look on Ms. Johnston’s face ... I know she didn’t transfer her appropriately.” Again, Mason’s use of a pronoun refers to Kourtney. Kourtney is not only the subject of the previous sentence, but is identified as the sole transferor of M.L.C., and thus the only person to whom Mason could be referring when she states that she did not “see her” drop M.L.C. Because Johnston is identified by name in the sentence, the majority’s contention that Johnston could also be the “her” that Mason describes as having dropped M.L.C. is simply untenable. Replacing Johnston’s name with the pronoun “her” would read this way: “I did not see [Johnston] drop M.L.C. on the mat, but by [Johnston’s] response, and the look on Ms. Johnston’s face ... I know she didn’t transfer her appropriately.” Mason’s use of the pronoun “her” clearly refers to Kourtney — the person whom Mason describes as dropping M.L.C. — not Johnston, who witnessed the action and, from Mason’s description, presumably displayed some sort of shock indicating that Kourtney improperly transferred M.L.C.
The majority, in a footnote, concludes that even if it was Kourtney and not Johnston who dropped M.L.C., the Acadia Policy would still be triggered because “HCSD is potentially liable under the same agency theory invoked by the Coward family as to Johnston.” Where a plaintiff is seeking to hold an employer liable for the conduct of an employee, it is the employee’s conduct that determines whether there has been an “occurrence” triggering coverage of the liability insurer. See Am. Guarantee & Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 810 (5th Cir.1997) (“[T]he ‘ultimate question’ for coverage purposes is whether the employee’s intentional misconduct itself falls within the definition of an occurrence.”). Thus, it is the conduct of Johnston, not HCSD, which determines whether there has been a “bodily injury” caused by an “occurrence” triggering Acadia’s coverage obligations.
But the Cowards do not allege that HCSD is liable for any negligent conduct by Johnston under a theory of respondeat superior. The Cowards allege claims of: (1) conspiracy; (2) breach of fiduciary duty; (3) intentional or negligent infliction of emotional distress; (4) negligence; (5) negligent supervision, assignment, hiring, and retention; (6) negligent misrepresen *397 tation; (7) and deprivation of constitutional rights under 42 U.S.C. § 1983. Every claim is predicated on Johnston’s intentional abuse of M.L.C. The Cowards’ negligence claim asserts that HCSD and individual defendant officials of the school breached their duty of care to M.L.C.
by negligently failing to act as reasonable and prudent teachers and school administrators ... Specifically, Kourtney Parnell failed to timely report Johnston’s mental and physical abuse of M.L.C., thereby causing a delay in appropriate response to the wrongful conduct. Once the conduct was reported to defendants, they failed to take appropriate action to protect the rights of Plaintiffs under the laws of Mississippi and the United States.
Am. Compl. ¶ 44 (emphasis added).
Neither Kourtney Parnell nor any other non-administrative employee is named as a defendant in the lawsuit. The Cowards seek to impute the “negligence of the teachers, administrative employees and agents of [HCSD]” to the school district under the doctrine of respondeat superior. Am. Compl. ¶ 47. But, contrary to the majority’s contention, the Cowards do not claim that HCSD is vicariously liable for an unintentional tort — such as a negligent drop — committed by Johnston (most likely because, as discussed above, none is alleged). The negligence claim asserted in the Amended Complaint is that HCSD is responsible for its teachers’ and administrators’ failure to report Johnston’s intentional abuse and for failing to stop the abuse once they were aware of it.[4] Neither committing intentional abuse, nor failing to report such abuse, is an “accident” constituting an occurrence under the policy-
The only other language in the Amended Complaint that could possibly give rise to the majority’s reading of a general “agency theory” asserting HCSD’s liability for an accidental act by Johnston is the reference to respondeat superior in the Cowards’ breach of fiduciary duty claim. This paragraph alleges that
[t]he abuses and assaults in this case arose from Ms. Johnston’s exercise of authority, power, and access created by her position and employment as a teacher for the Defendants. Plaintiffs thus plead vicarious liability under the doctrine of respondeat superior and/or ratification in that the Defendants knew or should have known of the dangerous propensities of Ms. Johnston and could foresee Ms. Johnston’s actions as arising from the duties of Ms. Johnston as a teacher of the Defendants.
Id. ¶ 35 (emphases added). Again, it is clear that the “agency theory” asserted here is that HCSD is liable for its administrators’ failure to prevent Johnston’s intentional conduct. All of the Cowards’ claims are premised on HCSD’s failure to uncover, warn, and stop Johnston’s intentional abuse of M.L.C. The Cowards simply do not claim that HCSD is liable for any unintentional torts of Johnston and thus there is no support for the majority’s position that Kourtney Parnell’s “accidental” drop of M.L.C. could bring the Cowards’ action within the scope of Acadia’s coverage. See Scruggs, 886 So.2d at 719 (“A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty *398 to defend those claims which fall outside the coverage of the policy.”).
Because the Amended Complaint does not allege accidental conduct by Johnston constituting an “occurrence” and all of the Cowards’ claims are premised on Johnston’s intentional abuse of M.L.C., I would affirm the district court’s ruling that Acadia has no duty to defend HCSD.
II.
Because the Cowards’ causes of action against Hinds County do not premise liability on accidental conduct of Johnston that could trigger coverage under the Acadia Policy, the district court’s grant of summary judgment on Acadia’s claim that it has no duty to indemnify HCSD should also be affirmed. It is true that the “duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all.”[5] State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC, 751 F.3d 684, 692 (5th Cir.2014) (internal quotation marks omitted). This is because the duty “turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy.” Id. (internal quotation marks omitted). But as any liability on the part of HCSD must necessarily be premised on the intentional abuse inflicted by Johnston as alleged in the Amended Complaint, there is no set of facts that could bring HCSD’s liability within the Acadia Policy’s coverage. Accordingly, I would also affirm the district court’s grant of summary judgment that Acadia has no duty to indemnify HCSD.[6]
I respectfully dissent.

. The Cowards' initial complaint did not allege any negligent conduct at all, but stated that the action was for the "abuse, battery and infliction of emotional distress against M.L.C.,” and consistently referred to Johnston's actions as "abuse and battery.” It was only after Acadia (and Ace American) refused to provide a defense or indemnify Hinds County that the Cowards filed an Amended Complaint describing Johnston’s conduct as negligent. But the Amended Complaint did not contain new factual allegations, it merely included the word "negligence.”

. The majority also states that the Cowards understood that Johnston, not Kourtney, dropped M.L.C. This is incorrect. In their response to Acadia’s interrogatory concerning the drop, the Cowards stated: "We do not know whether the incident where M.L.C. was dropped was intentional or not. The only information we have on the incident is ... the statement of Larina Mason on April 2, 2009.”

. While it is unclear whether Kourtney meant that she had dropped M.L.C. because she did not want to hurt her back, or whether she meant that she was not going to pick her up off the mat because doing so would hurt her back, it is clear that Kourtney is the speaker.

. Likewise, the Cowards' negligent supervision and hiring claim alleges that defendants "negligently failed to warn Plaintiffs, their family, or any of the pupils’ parents of Ms. Johnston's dangerous propensities despite knowledge of these propensities.” Am. Compl. ¶ 49 (emphasis added).

. Mississippi federal district courts have consistently held that "because the duty to defend is broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify.” Haney v. Cont'l Cas. Co., No. 08-482, 2010 WL 235025, at *2 (S.D.Miss. Jan. 15, 2010); see also Tudor Ins. Co. v. Manchester Educ. Found., Inc., 10-493, 2013 WL 228023, at *2 (S.D.Miss. Jan. 22, 2013) (same); Coleman v. Acceptance Indem. Ins. Co., 08-260, 2009 WL 1873742, at *6 (S.D.Miss. June 29, 2009), aff'd, 369 Fed. Appx. 595 (5th Cir.2010) (same); Evanston Ins. Co. v. Neshoba Cnty. Fair Ass’n, Inc., 442 F.Supp.2d 344, 346 n. 1 (S.D.Miss.2006) (same). This court has not established such a "per se rule.” Coleman, 369 Fed.Appx. at 598.

. Shortly after the instant appeal was taken, the district court dismissed all of the Cowards' claims except for their § 1983 claim. There is no plausible argument that the Acadia Policy’s coverage for accidental conduct could encompass any set of facts establishing the denial of M.L.C.'s asserted constitutional right to bodily integrity.