**Thomas J. LYONS, Appellant,**

v.

**AMERICAN HOME ASSURANCE COMPANY, Respondent.**

**No. C0–84–301.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Thomas Kane, Laurie A. Zenner, Oppenheimer, Wolff, Foster, Shepard, & Donnelly, St. Paul, for appellant.

Roy E. Potter, New Brighton, for respondent.

Heard, considered, and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant Lyons from an award of summary judgment to

respondent American Home Assurance Company in which the trial court found no duty on the part of respondent to defend appellant under a policy of professional liability insurance. We reverse.

## FACTS

Appellant Thomas Lyons is an attorney who had formerly been a partner of Peterson, Tews & Squires (PTS), which was then known as Peterson, Lyons, Tews & Squires (PLTS). In late 1978, Lyons terminated his association with PLTS, setting up his own practice of law. Immediately following the termination, Lyons and his former partners attempted to negotiate a settlement of fees and expenses on closed shared files and the potential fees and expenses on open shared files.

Because a division of fees with respect to the files Lyons retained upon dissolution could not be resolved between the parties, Lyons petitioned for arbitration of the issue. On June 23, 1980, the arbitration panel awarded PTS 50 percent of the fees "received or to be received" in 12 shared files.

Among those 12 files was *Sheila Smith, a Minor, by Mother, Mary Smith, Guardian and Next Friend v. Archbishop of St. Louis, et al.* The case originated in 1976 while Lyons was still practicing with PLTS. Sheila Smith is Lyons' niece and goddaughter. Smith was severely burned when the Halloween costume she was wearing at a school party caught fire. At the arbitration, Lyons represented that the fee arrangement on the Smith file was a one-third contingency fee. The arbitrators awarded PTS 50 percent of all attorney's fees to be received by Lyons on the Smith file.

Because the Smith accident occurred in Missouri and the plaintiff in the resulting action is a Missouri resident, Lyons contacted a Missouri attorney to handle part of the case. Due to Lyons' diminished role in the case, Lyons did not take a one-third

contingent fee, but decided to petition the court for fees based on time spent and expenses incurred. The Missouri Juvenile Court approved Lyons' petition for $35,750 in fees. Pursuant to the arbitration panel's award, Lyons distributed one-half of the $35,750 to PTS.

PTS then moved for an accounting under the arbitrators' award. PTS also asserted rights under the Uniform Partnership Act, claiming a breach of fiduciary duty. It argued that Lyons should have petitioned the court for one-half of a one-third contingent fee, which would have been approximately $250,000, since Sheila recovered $1.5 million. It further claimed usurpation of a corporate opportunity by Lyons' failure to participate in the suit brought by Mary and C.L. Smith, Sheila's parents, for medical expenses. The arbitration was reopened and Lyons defended on the grounds that his ethical duty to his client took priority over his obligation to his former law partners.

The arbitration panel's decision was issued on October 21, 1983. The panel found that Lyons' "ethical responsibility to the client (outweighed) any responsibility he may have to his former partners," and PTS was not entitled to additional fees or payment from Lyons arising from the Sheila Smith case. However, the arbitration panel assessed all administrative fees of the reopened arbitration against Lyons because Lyons "did owe his former partners at least the courtesy or moral responsibility of advising them of his determination to charge a lesser fee and to give them an opportunity for discussion of the matter with him or possible intervention in the award of fees by the St. Louis Court."

Respondent American Home Assurance Company (American Home) first received notice of the PTS claim against Lyons by letters from Lyons' counsel. He asserted the claim of Lyons' former partners was "within Mr. Lyons' coverage under his policy for any act or omission of the insured in rendering or failing to render professional

services for others in the insured's capacity as a lawyer * * *."

American Home rejected the tender of defense of the PTS claim, contending that it was not within this coverage. Lyons brought a declaratory judgment action against American Home, seeking a determination that American Home was obligated to provide coverage and a defense. The trial court granted American Home's motion and dismissed Lyons' complaint with prejudice. The trial court found that the fee division claim of the former partners of Lyons arose because of Lyons' "* * * breach of duty to his former partners and, as the arbitrators found, had nothing to do with his representation of the client."

Inasmuch as the underlying arbitration proceeding has been concluded with a determination favorable to Lyons, the only issue on appeal is whether American Home had a duty to defend Lyons in that proceeding.

## ISSUE

Was the trial court correct in ruling as a matter of law that the insuring language in a professional liability insurance policy did not reach a claim against its insured brought by his former partners for recovery of fees under an arbitration agreement?

## ANALYSIS

Lyons contends that the PTS claim is within the scope of the policy's coverage. The American Home policy provides coverage for claims:

arising out of any act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer.

Lyons argues that the PTS action was tied directly to Lyons' client, and clearly arose out of Lyons' representation of that client, thereby meeting the definition of coverage in the policy.

In denying coverage, American Home characterized Lyons' claim as a personal obligation arising out of the arbitration award, "nothing more than a business dispute among lawyers over the allocation of fees for matters taken by a departing member of the firm." At oral argument, American Home's attorney argued that the claim arose when Mr. Lyons became obliged under the terms of the arbitrators' agreement to pay one-half of fees received to his former partners.

The principal case relied upon by Lyons is *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484 (1959). In *Cadwallader*, the Pennsylvania Supreme Court interpreted a policy provision similar to that in the subject policy. The policy in *Cadwallader* provided a duty to defend "claims made against the insured arising out of the performance of professional services for others * * * as a lawyer and caused by any negligent act, error or omission of the insured." *Id.* at 587, 152 A.2d at 487.

In that case, Cadwallader, an attorney, and two other attorneys entered into an agreement, under the terms of which Cadwallader would conduct litigation on behalf of his own client and theirs. The other two attorneys withdrew from the case. The agreement protected the interests of Cadwallader's client. In return for the withdrawal of the two attorneys, Cadwallader promised to retain fees claimed by them, and to assure that those fees were not dispersed to Cadwallader's client. Through mistake and neglect, the fees were paid over to Cadwallader's client. The two attorneys sued. Cadwallader's insurer refused to defend the claim. In finding coverage under Cadwallader's protective policy, the Pennsylvania Supreme Court stated:

It is of course clear that if there be any ambiguity in the contract of insurance it must be resolved in favor of the insured since it was the insurer who wrote the contract. (Cites omitted.) The insurance company, according to the terms of the

protective policy, had a duty to defend · "claims made against the insured arising out of the performance of professional services for others * * * as a lawyer and caused by any negligent act, error or omission of the insured * * *." It cannot seriously be contended that the breach did not arise out of the "performance of professional services."

The court found for Cadwallader on both the duty to defend his claim and on coverage.

Unlike the trial court, we can discern no reasonable basis upon which to distinguish *Cadwallader* from the case at bar. Both Cadwallader and Lyons allegedly owed an obligation to another law firm to divide fees arising out of the representation of a client. Each had an agreement as to how the fee would be divided. In neither case was a malpractice action brought on behalf of a client. To the contrary, in both *Cadwallader* and the instant case, there is no indication the clients made any complaint about the quality of legal representation afforded them. Cadwallader did not comply with his agreement with the other attorneys, and was sued by them. Here, Lyons did comply with his agreement with his former partners and distributed to them 50% of the fee coming to him in the Smith case. The dispute arose not over allocation of fees among partners as American Home urges, but over the amount Lyons had charged for his services in representing his client.

We believe the court's reasoning in finding coverage in *Cadwallader* to be sound. American Home argues that Lyons' actions were clearly outside of the insuring language of his policy. We disagree. We find the language of Lyons' policy to be broad enough to cover the circumstances of this case. If an insurer wishes to limit coverage so that it applies only to malpractice actions brought against the insured by clients, the insurer may incorporate language in the policy to create that limitation. Conversely, we, of course, do not intend by our ruling here to broaden coverage to apply to business disputes arising among members of a law firm as to the distribution or division of partnership or association fees. We do conclude, however, that the dispute between Lyons and PTS did arise out of an "act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer."

There are two exclusionary clauses in the policy. American Home argued before the trial court that these clauses would exclude coverage even if that coverage might otherwise be considered to be within the contemplation of the insuring agreement. The trial court, understandably, did not address these exclusionary clauses in its memorandum, nor does American Home refer to them in its appeal brief. Notwithstanding that procedural posture, we have reviewed the clauses and find them inapplicable in the factual context of this case.

## DECISION

The claim against Lyons arose out of the rendition of professional services. American Home is obligated to furnish a defense for Lyons in connection with the PTS claim, and is obligated for all attorney's fees, defense costs, and other damages incurred in connection with that claim.

Reversed.