850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The HOME INSURANCE COMPANY, Plaintiff-Appellant, Cross-Appellee,
v.
Charles C. BULLARD and Mary G. Hayes, Defendants-Appellees,
Cross-Appellants.
 Nos. 87-5849, 87-5910.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1988.
 
 Before CORNELIA G. KENNEDY and NATHANIEL R. JONES, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arose as a result of a lawsuit filed in Kenton Circuit Court, Kenton County, Kentucky, by Terrence Moore, an attorney, against his former associate, Charles Bullard, and Bullard's then law clerk, Mary Hayes. In that civil action, which is still pending, Moore alleges that Bullard and Hayes, by "fraud and misrepresentations," appropriated civil cases referred to him, and by "fraud, misrepresentation and in direct breach of [their agreement with Moore] converted various referrals to their own use." Moore seeks both compensatory and punitive damages.
 
 
 2
 Upon learning of this action, Bullard and Hayes, ("appellees"), demanded that Home Insurance Company, ("Home" or "appellant"), their insurer, provide a defense to Moore's claims and indemnify them for any damages awarded to Moore. Home claimed that the professional liability policy it had issued to the appellees did not provide coverage in this instance, thus it instituted this action in the United States District Court for the Eastern District of Kentucky on August 8, 1985, seeking a declaratory judgment regarding its duty to defend and the scope of its coverage.
 
 
 3
 By an order dated November 10, 1986, Judge William Bertelsman granted the appellees' motion for summary judgment, thereby holding that the policy issued by Home to Bullard and Hayes provided coverage for the allegations of misappropriation of clients and fees, and therefore, Home owed a duty to the appellees to defend them in the Kenton Circuit Court action. The court also assessed costs and attorney's fees in the declaratory action to Home.
 
 
 4
 Subsequently thereafter, Home filed a motion to alter or amend the judgment. After the appellees filed a response to the motion, the court, on July 6, 1987, modified its previous judgment and held that Home's policy covered only those acts of the appellees which were not fraudulent and/or intentional, and, to that extent, Home owed the appellees a duty to defend. The court also relieved Home of liability for the appellees' attorney's fees in the declaratory judgment action, but still held Home responsible for all costs incurred.
 
 
 5
 On July 23, 1987, Home timely filed its notice of appeal. On August 4, 1987, the appellees timely filed their notice of cross-appeal from the district court's order that Home was not responsible for their attorney's fees and from the court's order that Home's policy did not provide coverage for the appellees' intentional acts. For the following reasons, the district court's judgment is affirmed.
 
 I.
 
 6
 Home is an insurance company which provides coverage for a variety of risks, including professional liability insurance for attorneys. On July 15, 1984, Home issued a liability policy to "Bullard and Hayes, Attorneys." This policy provided coverage from July 15, 1984 to July 15, 1985.
 
 
 7
 On December 27, 1984, during the effective period of the policy, Terrence Moore, an attorney in Covington, Kentucky, filed a civil action in Kenton Circuit Court, against Bullard and Hayes, the appellees in this action. The allegations in Moore's complaint arose out of a professional relationship between Moore and Bullard which extended from April 1982 through May 1983. The complaint alleged that, during their professional relationship, Bullard was an "employee and or associate" of Moore's in the practice of law. Hayes was alleged to have been an employee of Bullard. Based upon the relationship between Moore and Bullard, and Bullard and Hayes, Moore alleged, in his complaint, that several acts of dishonesty had occurred, including Bullard and Hayes's diversion of clients from him, their misrepresentation of his capacity to handle certain cases, and their refusal to split the fees earned by their diversion of his potential clients. During discovery conducted in the Kenton Circuit Court action, certain relevant facts were revealed.
 
 
 8
 In early May 1982, immediately after being admitted to the Bar of the Commonwealth of Kentucky, Bullard joined Moore at Moore's office to begin practicing law. Moore was an experienced attorney who was principally engaged in medical malpractice litigation. Bullard was a newly licensed attorney with no clients of his own. Moore agreed to guarantee Bullard a minimum yearly salary of $26,000. On legal matters on which Moore and Bullard were to jointly work, Bullard was to receive anywhere from one-third to one-half of the fee received by Moore after a deduction for expenses. The proportional fee received by Bullard was to be credited toward the $26,000 yearly income guaranteed by Moore. Bullard was free to handle any cases referred directly to him and any income he earned on those cases was also to be credited toward the $26,000 minimum yearly salary.
 
 
 9
 All of the expenses associated with the cases being handled by Moore and Bullard jointly, or which were referred by Moore to Bullard, were to be paid by Moore. Moore was to pay all secretarial services whether they related to cases he was handling or to cases that Bullard was handling. Bullard was to pay those incidental expenses which were solely attributable to cases referred to him. Moore and Bullard equally shared the cost of their medical and health insurance policy. Bullard was responsible for paying his own withholding taxes. And, in order to relieve Moore of any liability for employment taxes associated with Bullard's legal work, Moore and Bullard entered into an "Office Sharing Agreement" which designated Moore as an "Independent Contractor."
 
 
 10
 At the time Bullard joined Moore, Mary Hayes had been a long time acquaintance of Bullard. Hayes was in law school and had clerked for various attorneys in the Covington, Kentucky area. Shortly after Bullard began practicing law with Moore, he hired Hayes to work as his law clerk. The understanding between Bullard and Moore was that Hayes was to work strictly with Bullard and to be paid solely by Bullard.
 
 
 11
 The working relationship between Bullard and Moore began to sour shortly after it began. Moore, in his deposition, stated that he learned that Moore and Hayes were diverting his prospective clients to themselves. According to Moore, a prospective client, Sarah Toadvine, called the office and asked for Moore. Hayes advised Toadvine that Moore no longer handled domestic relation cases, but that Bullard did. Toadvine, unbeknownst to Moore, became a paying client of Bullard's. Moore did not learn that Toadvine had sought to retain him, not Bullard, until late one evening when Toadvine called the office and neither Bullard nor Hayes were present.
 
 
 12
 Moore also, in his deposition, stated that, on another occasion, a lady by the name of Pat Thomas called his office at 6:15 p.m. Since Hayes and Bullard had left the office, he answered the phone call and learned that Pat Thomas had been referred to him as a client by another attorney, Jack Howell. When she had initially attempted to contact Moore, however, Hayes had advised her that Moore had left town, but that Bullard was an expert in medical malpractice cases. Thus, Thomas also became a client of Bullard's.
 
 
 13
 A similar situation also occurred, according to Moore, with respect to another case which had been referred to him. Specifically, Moore testified that he was retained by the parents of a minor who had been killed in an automobile accident. After Bullard joined Moore, Bullard was delegated various investigatory functions concerning the case. Later, however, Moore was notified by the deceased child's parents that his representation was being terminated and that he was to be removed as counsel of record. Eventually, Moore learned that he had been terminated because of representations made by Bullard and Hayes that he had moved to New Mexico and was no longer practicing law.
 
 
 14
 This action was resolved in district court by Judge Bertelsman's grant of the appellees' motion for summary judgment. Federal Rule of Civil Procedure 56(c) provides for a grant of summary judgment if the court finds that there is no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. In determining a motion for summary judgment, a court must consider the pleadings, related documents and evidence, and all reasonable inferences in a manner most favorable to the non-moving party. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).
 
 
 15
 Because there are no genuine issues of material fact remaining in this declaratory action, Judge Bertelsman was correct in granting the appellees' motion.
 
 II.
 
 16
 At the focus of this appeal, of course, is the Home professional liability insurance policy which was issued to Bullard and Hayes. The provisions which define the scope of the coverage of the policy, and whether Home has a duty to defend and indemnify the insureds, are as follows:
 
 Coverage
 
 17
 1. Professional Liability and Claims Made Clause: To pay on behalf of the insured all sums in excess of the deductible amount stated in the declarations for which the insured shall become legally obligated to pay as damages as a result of claims first made against the insured during the policy period.
 
 
 18
 (A) By reason of any act, error or omission in professional services rendered or that should have been rendered by the insured or by any person for whose acts, errors or omissions the insured is legally responsible, and arising out of the conduct of the insured's profession as a lawyer or notary public or title insurance agent;
 
 
 19
 (B) Because of personal injury and arising out of the professional services of the insured as a lawyer or notary public or title insurance agent;
 
 
 20
 (D) By reason of any act, error, omission, or personal injury committed by any non-lawyer employee, but arising solely out of legal services rendered within the scope of such person's employment for the named insured.
 
 
 21
 J.App. at 10 (emphasis added).
 
 
 22
 The policy contains the following definitions:
 
 
 23
 (1) Services performed by the insured. The performance of professional services for others in the insured's capacity as a lawyer.
 
 
 24
 (2) Claim. A demand received by the insured for money including the service of suit against the insured.
 
 
 25
 (3) Damages. A monetary judgment.
 
 
 26
 See J.App. at 26.
 
 
 27
 In addition, the policy also contains the following exclusions:
 
 1. This policy does not apply:
 
 28
 (a) to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the insured. However, not withstanding the foregoing, the company will provide a defense for any such claims without any liability on the part of the company to pay such sums as the Insured shall become legally obligated to pay as damages;
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 (f) to any claim made by a present, former or prospective partner, officer, director, stockholder, employee or employee of the Insured unless such claim arises out of the professional services of the Insured in a lawyer-client relationship; ....
 
 
 32
 J.App. at 14.
 
 
 33
 Home claims, for a variety of reasons, that the above provisions do not provide coverage or a duty to defend. Home claims that the appellees' acts were intentional, thus placing them under an exclusion provision of the policy. Home also claims that Moore and Bullard were partners, which also places them under an exclusion provision. Furthermore, Home argues that the appellees' acts did not constitute "professional services" or "conduct of the insured's profession as a lawyer."
 
 
 34
 As with any contract, absent the existence of an ambiguity, the interpretation of an insurance policy is a question of law. Terms used in the policy are to be read in light of their ordinary and customary meaning. If the terms are ambiguous, the policy must be construed strictly against the insurer and any ambiguities resolved in favor of coverage. The language of a policy, however, may not be tortured so as to create an ambiguity where one does not exist. Furthermore, the determination of whether an insurance policy affords a duty to defend is determined solely by the allegations contained in the complaint.
 
 
 35
 Moore's allegations relating to the misconduct of the appellees concern the diversion of potential clients and cases through the interception of phone calls by the appellees, as well as their other misrepresentations relating to Moore's capacity to practice law, and Bullard's refusal to split fees in the manner in which he and Moore had agreed.
 
 
 36
 According to the relevant policy provisions, an essential ingredient for coverage is that the liability result from the rendition of professional services by the insured in the conduct of his profession as a lawyer. However, not every act of a lawyer constitutes the rendering of professional services within the meaning of an insurance policy. See, e.g., Bank of California, N.A. v. Opie, 663 F.2d 977, 981 (9th Cir.1981) ("A professional obviously performs many tasks that do not constitute professional services. As emphasized [above], to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession.... To be covered, the liability must arise out of the special risks inherent in the practice of the profession.").
 
 
 37
 In finding that Home owes both coverage and a duty to defend to the appellees, Judge Bertelsman held:
 
 
 38
 It is this Court's opinion that the acts complained of in the Moore complaint fall within the coverage provisions of the policy. Plaintiff's argument that the coverage provisions are restricted to clients is factually incorrect. Had the company desired such a situation, it could have clearly stated so in either the coverage provisions or the exclusions. Lyons v. American Home Assurance Company, 354 N.W.2d 892 [ (Minn.App.1984) ].
 
 
 39
 J.App. at 27.
 
 
 40
 Although both parties cite case law from other states which allegedly supports their position, we find the authority cited by the appellees, and relied upon by the district court, to be most on point. This case is simply not one arising over the division of fees between attorneys. Rather, it involves the representation of clients, through the appellees' alleged diversion techniques, and the division of fees from that representation. At least one act of which Bullard and Hayes is accused, i.e., the refusal to split fees in the agreed-upon manner, arose because of the rendering of professional services to clients, i.e., an act required by the policy to merit coverage. As such, it is not unreasonable that Bullard and Hayes expected to be covered and/or defended by their insurance company.
 
 
 41
 Because the policy at issue does not specify that a claim must be made by a client, we find that this claim by Moore against Bullard and Hayes falls within the policy's coverage. Therefore, the judgment of the district court as to this issue is affirmed.
 
 
 42
 Home also presents two other arguments. Both are without merit.
 
 
 43
 Home first argues that Hayes's entitlement to coverage is more tenuous than Bullard's claim. This argument is based upon Hayes's affidavit that she, at the time she was a law clerk to Bullard, was an "independent contractor," not an employee. Seemingly, this would exclude her from the policy's provision of coverage, i.e., the policy provides coverage for a "lawyer or an employee of the named insured."
 
 
 44
 Home, however, overlooks the fact that the insurance policy was issued to "Bullard and Hayes, Attorneys." Thus, Hayes is a named insured. Therefore, Hayes is as entitled to coverage as Bullard.
 
 
 45
 Lastly, Home claims that policy exclusion 1(f) is applicable in this case. That provision excludes coverage when a claim is made against the insured by a former "partner." Home claims that Moore and Bullard were "partners" in the practice of law.
 
 
 46
 A "formal" arrangement denoting such a relationship, however, has not been produced, and some aspects of Moore and Bullard's relationship do not designate or signify a partnership. Furthermore, if the conduct complained of arises out of the professional services of the insured in his capacity as a lawyer, the exclusion is inapplicable. Thus, the district court was correct in its finding as to the applicability of this provision.
 
 III.
 
 47
 On cross-appeal, the appellees challenge the court's conclusions as to policy exclusion 1(a) and as to their request for attorney's fees. Both challenges are meritless.
 
 
 48
 First, the appellees assert that the district court erred in holding that the policy's coverage did not extend to the appellees' intentional acts. In so doing, the court held that exclusion 1(a) of the policy, previously set forth, was applicable to this action, and while Home would have to defend the action brought by Moore, it would not be liable for any judgment entered which fell within the terms of the 1(a) exclusion, i.e., conduct by the appellees which was "dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful."
 
 
 49
 Appellees' reasoning as to this provision is erroneous. Rather, the exclusion is clearly applicable and the court's conclusion as to this provision is affirmed.
 
 
 50
 Finally, the appellees contest the court's finding that Home is not responsible for their attorney's fees in the declaratory action. The court's decision as to the issue is supported by Kentucky law, and thus, appellees' contention is without merit.
 
 
 51
 It is established law in Kentucky that each party is responsible for their own attorney's fees absent a contract providing otherwise. See McNutt v. State Farm Mutual Automobile Insurance Company, 369 F.Supp. 381, 385-86 (W.D.Ky.1973), aff'd, 494 F.2d 1282 (6th Cir.1974). Indeed, the unavailability of attorney's fees in a declaratory judgment action has been stated in several treatises. See, e.g., Couch, Cyclopedia of Insurance Law, Second Edition, which states as follows:
 
 
 52
 [I]t has been held that the insured cannot recover damages for attorneys' fees and other expenses and loss of time in connection with defending a declaratory judgment action brought by the insurer to determine its liability under an [automobile] liability policy....
 
 
 53
 Id. Sec. 51:148, at 699 (emphasis added).
 
 
 54
 Indeed, the appellees do not contend that any Kentucky decision entitles them to attorney's fees. Rather, they refer the court to a Kentucky statute and to a provision of the insurance policy which are clearly inapplicable to this appeal. Therefore, the court's denial of appellees' request for attorney's fees is affirmed.
 
 
 55
 Therefore, for all of the foregoing reasons, the district court's judgment, in its entirety, is hereby AFFIRMED.
 
 
 56
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 57
 The majority holds that Home Insurance Company's professional liability insurance policy covers the claim brought by Terrence Moore against Charles Bullard and Mary Hayes. Because I do not agree with this conclusion, I respectfully dissent.
 
 
 58
 The policy provides coverage for claims arising out of any act, error or omission in professional services rendered by the insured. Professional services require "[s]omething more than an act flowing from mere employment or vocation.... The act or service must be such as exacts the use or application of special learning or attainments of some kind." Bank of California, N.A. v. Opie, 663 F.2d 977, 981 (9th Cir.1981) (quoting Marx v. Hartford Accident and Indemnity Co., 183 Neb. 12, 13; 157 N.W.2d 870, 871 (1968)). The acts which formed the basis of the claim for which Bullard and Hayes seek coverage were the alleged misrepresentations made by them to Moore's potential clients for the purpose of diverting those clients to Bullard and Hayes. Because I do not believe these acts constituted the rendering of professional services, I would reverse the judgment of the district court, and hold that Home Insurance Company's professional liability policy does not provide coverage for these claims.