**EMPLOYERS REINSURANCE CORPORATION,**
Appellant,

v.

**Thomas CASWELL, et al., The Caswell Ross Agency, Inc., et al., C. Bruce Solomonson, Respondents,**

**Schweitzer, Rubin, Gottlieb & Karon, Defendant.**

**No. C2–92–300.**

Court of Appeals of Minnesota.

Sept. 1, 1992.

Review Denied Nov. 17, 1992.

Jeffrey M. Bauer, Foster, Waldeck, Lind & Gries, Ltd., Minneapolis, for Employers Reinsurance Corp.

Gary J. Gordon, Daniel Q. Poretti, Susan M. Weis, Fetterly & Gordon, P.A., Minneapolis, for Thomas Caswell, et al.

Robert A. Brunig, O'Connor & Hannan, Minneapolis, for Caswell Ross Agency, Inc., et al.

Considered and decided by PETERSON, P.J., and HUSPENI, and FORSBERG, JJ.

## OPINION

PETERSON, Judge.

An action was commenced by respondents Thomas Caswell, Hamilton Ross, Thomas Krausert and Charles Hommeyer (The Caswell Group) against respondents The Caswell Ross Agency, Inc. (Caswell Ross II), Regional Financial Agencies, Inc. (RFA), C. Bruce Solomonson, and the accounting firm of Schweitzer, Rubin, Gottlieb & Karon. The defendants in the underlying action tendered the lawsuit to appellant Employers Reinsurance Corporation (ERC), which denied coverage. ERC then commenced this declaratory judgment action seeking a judicial determination that it was not obligated to defend or indemnify its insureds. Caswell Ross II and RFA counterclaimed against ERC, seeking a judicial determination that ERC was obligated to defend and indemnify its insureds for claims for failure to remit insurance premiums.

The Caswell Group and ERC brought cross motions for summary judgment, and ERC also moved for summary judgment on the counterclaims of Caswell Ross II and RFA. The trial court denied ERC's motion as to the Caswell Group, granted ERC's motion for summary judgment as to Caswell Ross II and RFA, and granted the Caswell Group's motion for summary judgment. Judgment was entered pursuant to the trial court's order, and ERC appealed. On December 5, 1991, this court dismissed ERC's appeal pursuant to a stipulation for dismissal. The trial court made the express determination permitted by Minn. R.Civ.P. 54.02 and directed entry of judgment. ERC appeals from the final partial judgment.[1] We reverse.

## FACTS

The Caswell Group owned an insurance agency known as Caswell Ross Agency, Inc. In June 1985, RFA entered into a letter of intent to purchase Caswell Ross Agency from the Caswell Group. RFA was an insurance agency owned by C. Bruce Solomonson, John Morrison and Patrick McGovern. RFA's rights under the letter of intent were subsequently assigned to Caswell Ross II, which was also owned by Solomonson, Morrison and McGovern.

The parties executed a sale and security agreement on July 1, 1985. The agreement provided for the purchase of all assets of the agency by Caswell Ross II for a total consideration of $975,000, payable in installments over several years. In addition, the agreement called for the execution of a promissory note in favor of the Caswell Group in the amount of $975,000. The promissory note was secured by a security interest in the assets of the agency. The agreement further provided that the members of the Caswell Group were to be employed by Caswell Ross II.

From July 1, 1985 until July 20, 1987, Solomonson was the chairman of the board, a shareholder and an employee of Caswell Ross II and RFA. During this time, Solomonson wrongfully diverted over $1 million from RFA and Caswell Ross II into his personal account. To cover his activities, Solomonson altered records and documents. He also transferred funds between Caswell Ross II and RFA to cover up his wrongful diversion of funds.

Solomonson was convicted of eight counts of mail fraud and one count of bank fraud in connection with his activities. His conviction has been affirmed by the Eighth

---

1. The trial court's grant of summary judgment for ERC on the counterclaims of Caswell Ross II and RFA is not at issue on this appeal.

Circuit Court of Appeals. *United States v. Solomonson*, 908 F.2d 358 (8th Cir.1990).

As a result of Solomonson's misappropriations, Caswell Ross II was unable to make payments to the Caswell Group as required by the July 1, 1985 sale and security agreement. The Caswell Group was informed of Solomonson's activity in September 1987. In October 1987, the Caswell Group and Caswell Ross II entered into an agreement providing for the voluntary surrender of collateral, pursuant to which the assets of the agency were transferred back to the Caswell Group in accordance with the terms of the sale and security agreement entered into in 1985.

The Caswell Group commenced an action against Caswell Ross II, RFA, Solomonson and the public accounting firm of Schweitzer, Rubin, Gottlieb & Karon.[2] With respect to Caswell Ross II and RFA, the Caswell Group alleged that their negligent failure to develop and maintain appropriate accounting and managerial systems allowed Solomonson to commit his misappropriations. In addition, the complaint alleged that Caswell Ross II negligently misrepresented the cause and nature of the agency's inability to meet obligations as they became due. Furthermore, the complaint alleged Caswell Ross II misrepresented the nature and extent of Solomonson's activities.

Caswell Ross II and RFA were insured under policies of professional liability insurance issued by ERC. ERC asserted the policies did not provide coverage for the claims brought by the Caswell Group and commenced the present declaratory judgment action seeking a determination that it was not obligated to defend or indemnify Caswell Ross II and RFA.

The insuring agreement of the policies issued to Caswell Ross II and RFA are identical and provide:

## SECTION I

**COVERAGE.** The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by:

(a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, or

(b) any claim for libel or slander or invasion of privacy against the Insured,

arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public and any advertising activities, as respects claims first made against the Insured during the policy period.

In addition, the agreement contained the following exclusion:

**EXCLUSIONS.** This policy does not apply to:

(a) any dishonest, fraudulent, criminal or malicious act, or assault or battery;

\* \* \* \* \* \*

(e) any liability assumed by the Insured under contract, unless the Insured would have been legally liable in the absence of such contract;

Finally, the agreement included the following endorsement:

**IT IS AGREED** that this policy is extended to cover dishonest, fraudulent, criminal or malicious acts committed by an employee of the Named Insured, and paragraph (a) of the section of this policy captioned "Exclusions", is hereby amended accordingly. The coverage provided by this Endorsement shall extend to the Named Insured and any Insured, provided that such Insured did not personally participate in or ratify the dishonest, fraudulent or criminal act.

In the trial court, ERC asserted the claims of the Caswell Group against Caswell Ross II and RFA were "liability assumed by the insured under contract," and,

---

**2.** The claims against Schweitzer, Rubin have apparently been settled and Schweitzer, Rubin

has been ordered dismissed as a party without prejudice.

therefore, exclusion (e) barred coverage. In addition, ERC asserted the liability of Caswell Ross II and RFA did not arise "out of the conduct of the business of the insured in rendering services for others as a general insurance agent." The trial court held that the actions of Solomonson arose out of the conduct of the business of Caswell Ross II and RFA as a general insurance agent. In addition, the trial court determined Exclusion (e) is limited to claims in which the insured has expressly assumed the liability of another, as in the case of an indemnification agreement. ERC has appealed from the judgment.

## ISSUE

Did the trial court err in determining the Caswell Group's losses arose out of the conduct of the business of Caswell Ross II as a general insurance agent?

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

The parties do not claim there is any genuine dispute as to a material fact. The trial court's grant of summary judgment was based on its interpretation of an insurance policy, a question of law which this court reviews de novo on appeal. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

■ The Caswell Group contends there is coverage for Solomonson's conduct under the fraud endorsement of the ERC policy. We disagree. In interpreting an insurance policy, an endorsement attached to the policy forms a part of the insurance contract, and the policy and endorsement must be construed together. *Wyatt v. Wyatt*, 239 Minn. 434, 436, 58 N.W.2d 873, 875 (1953). A construction of a policy that

neutralizes one provision should not be adopted if there is another construction available that gives effect to all the policy provisions and is consistent with the parties' general intent. *Id.* at 437, 58 N.W.2d at 875; *see also Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.*, 304 Minn. 179, 184, 229 N.W.2d 516, 519–20 (1975). A policy and its endorsements should be construed, to the extent possible, in such a manner as to give effect to all provisions. *Lang v. General Ins. Co. of Am.*, 268 Minn. 36, 40, 127 N.W.2d 541, 544 (1964).

In the present case, the insuring agreement of the ERC policy provided coverage for liability arising out of the conduct of the business of Caswell Ross II in rendering services for others as a general insurance agent. In the body of the policy, there is an exclusion for dishonest or fraudulent acts. The policies at issue also contain an amendatory endorsement that, in effect, eliminates the exclusion for dishonest or fraudulent acts.

■ Before any coverage will exist under the fraud endorsement, the claim against RFA and Caswell Ross II must arise out of the conduct of the insured as an insurance agency. The claims in this case arise out of the purchase of a business by the insured, not out of the conduct of the business of the insured. The ERC policy does not provide insurance coverage for every loss caused by the actions of its insured; it covers only those losses ERC agreed to cover—losses arising out of the conduct of the insured as an insurance agency. *See Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 233–35 (Minn.1986).

The loss in this case arose out of the inability of Caswell Ross II and RFA to pay a corporate debt. If, as a result of Solomonson's activities, Caswell Ross II had been unable to pay other debts incurred by the agency, such as the cost of office supplies ordered by Caswell Ross II, the agency's professional liability insurer would not be obligated to pay such business expenses. In effect, that is what ERC is being asked to do. Properly handling

business revenue to ensure that business expenses are paid is a responsibility of every business. It is not a professional act associated with providing insurance services.

In this regard, the present case is readily distinguishable from *Lyons v. American Home Assurance Co.*, 354 N.W.2d 892 (Minn.App.1984), *pet. for rev. denied* (Minn. Jan. 9, 1985). In *Lyons*, the conduct at issue was an attorney's decision to accept a lower than normal fee for a case because of the involvement of co-counsel. Upon discovering the reduced fee, the attorney's partners sought 50% of the standard fee, which would have amounted to $250,000, rather than the $35,750 actually received. *Id.* at 893.

> In finding coverage, this court stated: Here, Lyons did comply with his agreement with his former partners and distributed to them 50% of the fee coming to him in the Smith case. The dispute arose not over allocation of fees among partners as American Home urges, but over the amount Lyons had charged for his services in representing his client.

*Id.* at 895.

A fee agreement is an integral part of the attorney-client relationship. It is an unavoidable part of the professional services provided to the client. By contrast, the loss of revenue in the present case was not caused by any act associated with any insurance client of Caswell Ross II. The mere fact that money generated by the operation of the agency was misappropriated does not establish the misappropriation arose out of the conduct of the insured as an insurance agency.

The Caswell Group argues that Solomonson's position as an executive officer and employee of Caswell Ross II and RFA made his misappropriation possible. Assuming this is true, it does not follow that the misappropriations arose out of the conduct of the business of Caswell Ross II and RFA. *See Grossman v. American Family Mut. Ins. Co.*, 461 N.W.2d 489, 493–94 (Minn.App.1990), *pet. for rev. denied* (Minn. Dec. 20, 1990). As in *Grossman*, the underlying litigation in the present case does not arise out of the ordinary business activities of the insured. It arises out of the sale of an insurance agency in which the sellers retained a security interest. That security interest has been adversely affected by the actions of an officer of the buyer. As in *Grossman*, this is not the sort of risk the insurer agreed to undertake.

### DECISION

The Caswell Group's losses did not arise out of the conduct of Caswell Ross II as an insurance agency, and the ERC policy affords no coverage.

Reversed.