839 So.2d 843 (2003)
Gary W. ROBERTS and The Roberts Law Firm, P.A., f/k/a Roberts & Sojka, P.A., Appellants,
v.
FLORIDA LAWYERS MUTUAL INSURANCE COMPANY, a Florida corporation, Appellee.
No. 4D02-1223.
District Court of Appeal of Florida, Fourth District.
March 5, 2003.
*844 Aaron C. Wong and Brenton N. Ver Ploeg of Ver Ploeg & Lumpkin, P.A., Miami, for appellants.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and Robert Geisler of Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, West Palm Beach, for appellee.
GROSS, J.
The issue in this case is whether a dispute between former partners in a law firm over how to divide fees and costs triggers coverage and a duty to defend under the law firm's lawyer's professional liability policy.
The trial court concluded that there was neither a duty to defend nor coverage under the policy in an order granting appellee, Florida Lawyers Mutual Insurance Company's ("Florida Lawyers"), motion to dismiss with prejudice for failure to state a cause of action. The Roberts Law Firm and Gary Roberts appeal. We affirm.
This appeal arises out of a separate action brought by Roberts's former law partner, Cindy Sojka. The Sojka lawsuit stemmed from the breakup of two personal injury law firms, Roberts & Sojka, P.A., and Roberts, Sojka & Associates. The partners settled the "Witt" case and received $150,000.00 in advanced costs and expenses and $191,000.00 in legal fees. After the case was settled, but before the money was disbursed, Roberts terminated Sojka's employment with the firm. She received no reimbursement for money she had loaned the firm and no part of the fee received.
Sojka filed suit against the two law firms and Roberts individually. The third amended complaint contained a derivative claim; Sojka sued Roberts on behalf of the Roberts/Sojka law firms claiming that Roberts had breached his fiduciary duty to *845 the firms in his handling of the firm's money. The pleading also contained counts for unjust enrichment, spoliation of evidence, and constructive trust.
Roberts and his new law firm notified Florida Lawyers of the Sojka lawsuit and requested that the company provide them with a defense under a lawyers professional liability policy. Florida Lawyers refused to provide a defense and declined coverage under the policy.
After a jury trial, the Sojka suit culminated with a final judgment on the derivative claim. Sojka, on behalf of Roberts & Sojka, P.A. recovered from Roberts a total of $302,106.26 in damages and $313,315.98 in attorney's fees. Appellants' cost to defend the Sojka action exceeded $270,000.
Appellants then filed this action against Florida Lawyers for breach of contract resulting from the company's failure to defend and to indemnify. The trial court dismissed the complaint for failure to state a cause of action.
The policy provided coverage for "[a]ny act, error or omission in Professional Services provided or that should have been provided." The policy defined professional services as:
services performed by an Insured lawyer: (a) in a lawyer-client relationship on behalf of one or more clients; (b) as a notary public; (c) as an administrator, conservator, receiver, executor, guardian, trustee, or any other similar fiduciary capacity; (d) as an arbitrator, mediator, referee, special master, hearing officer, or other participant in a dispute resolution process; (e) as a title agent.
"Professional Services" does not mean or include any matter pertaining to an insured lawyer's charges for services or expenses.
An exclusion in the policy stated that the insurance did not apply to:
5. Any Claim made against an Insured by a present, former or prospective partner, officer, director, stockholder or employee unless the Claim arises out of legal services' performed in a lawyer-client relationship.
The construction of an insurance policy to identify the scope of coverage is a question of law subject to de novo review on appeal. See Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla.1985); Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 357 (Fla. 4th DCA 2001). The scope and extent of insurance coverage is defined by the language and terms of the policy. See Siegle, 788 So.2d at 359. In construing an insurance policy, the court should read the policy as a whole, giving every provision its full meaning and operative effect. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. See Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla.2002); Anderson, 756 So.2d at 34; McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 694-95 (Fla. 4th DCA 1999). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage...." Anderson, 756 So.2d at 34.
Appellants contend that there was coverage under the policy because the third amended complaint alleged that Roberts breached his "fiduciary" duty to the law firm and that he was acting in an "administrative" capacity for the law firm when he did so. They argue that such breaches fell within the policy's definition of "professional services." We hold that the partners' dispute over how to divide money received from a lawsuit was not an "act, error or omission in Professional Services provided" within the meaning of the policy.
*846 The policy covers "professional services" that the insured lawyer has "provided." "Provide" is a transitive verb meaning to "furnish, supply, or equip." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1157 (unabridged ed.1967). We construe "provide" as meaning that the professional services defined in the policy are ones that are provided to or performed on behalf of third parties, the consumers of professional services. This construction is consistent with the list of services quoted above. The words "administrator" and "fiduciary" take their meaning from the other terms in the definition  "lawyer-client relationship," "notary public," "conservator," "receiver," "executor," "guardian," and "trustee." All are types of work lawyers perform for others. "Fiduciary" is modified by "similar," signifying that the policy's use of the term is in the same sense as the terms that immediately preceded it in subparagraph (c).
Also, the policy definition of professional services excludes "any matter pertaining to an insured lawyer's charges for services or expenses." How the law firm was to divvy up fees and expense payments received "pertained" to the firm's "charges for services or expenses" within the meaning of the policy.
This interpretation is reinforced by the policy exclusion for claims made against the law firm by "a present, former, or prospective partner." Appellants contend that this exclusion "provides coverage for legal disputes between partners and former partners when such disputes `arise out of legal services performed in a lawyer-client relationship,' ... [which] is the case here, where Sojka, on behalf of the Firm, sued Roberts for a breach of fiduciary duty `arising out of the performance of a `legal service'  the settlement of the Witt case." Such a reading of the exclusion is plainly unreasonable. An unreasonable reading of an insurance policy provision does not create an ambiguity that must be construed most favorably to the insured. If read as broadly as appellants desire, the exclusion would subsume portions of the policy defining the scope of coverage.
Two cases upon which appellants primarily rely are distinguishable. In Continental Casualty Co. v. Cole, 809 F.2d 891 (D.C.Cir.1987), a lawyer retained another law firm on behalf of his client. The lawyer specified that the law firm could not settle the case without his consent and that he would share any attorney's fees ultimately awarded. After the case was settled, the lawyer sued the law firm; two counts for breach of contract alleged that the law firm "had breached its agreement with [the lawyer] by failing to obtain his consent to the proposed settlement ... and by refusing to share with him the attorneys' fees that it had received" in the case. Id. at 895. The circuit court found that the "heart" of the lawyer's obligations was that the law firm breached its contract with him. Id. at 896. The court held that this claim fell within the coverage language of the policy that damages arise from "the performance of professional services for others in the insured's capacity as a lawyer;" the lawyer was an "other" under the policy for whom professional services had been performed. Id. The court also held that the settlement of the client's case was the performance of "professional services" services under the policy. Id.
Unlike the lawyer in Continental Casualty, Sojka was not a consumer of her law firm's services. She did not negotiate a contract with the firm as the agent of a client. There was no allegation in Sojka's third amended complaint that Roberts had improperly settled the "Witt" case. The conduct ascribed to Roberts in Sojka's lawsuit is the type of conduct that Continental Casualty describes as not involving the *847 performance of professional services  "the relationship between a law firm and its employees." Id. at 896.
In Lyons v. American Home Assurance Co., 354 N.W.2d 892 (Minn.App.1985), a law firm sued a former partner contending that he had improperly settled a case by taking too low a fee from the client. The Minnesota court held that this lawsuit was covered under a professional liability policy providing coverage for claims "arising out of any act or omission of the insured in rendering ... professional services for others in the insured's capacity as a lawyer." Id. at 894. The court found it significant that the case "arose not over allocation of fees among partners" but over the amount the lawyer "had charged for his services in representing his client." Id. at 895. Lyons is therefore unlike this case, where the dispute concerned the division of fees. Also, there is no indication that the policy applied in Lyons defined "professional services" as did the policy in this case.
Because the third amended complaint did not allege facts that created potential coverage under the policy, Florida Lawyers had no duty to defend appellants under the policy. See, e.g., State Farm Fire & Cas. Co. v. Higgins, 788 So.2d 992, 995 (Fla. 4th DCA 2001).
AFFIRMED.
MAY, J., and DAMOORGIAN, DORIAN, Associate Judge, concur.