873 So.2d 547 (2004)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Gary PARRISH and Joellen Parrish, etc., Appellees.
No. 5D03-2504.
District Court of Appeal of Florida, Fifth District.
May 21, 2004.
*548 F. Bradley Hassell and Thomas C. Smith, Daytona Beach, for Appellant.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, and Robert M. Moletteire of Graham, Moletteire & Torpy, P.A., Melbourne, for Appellees.
PLEUS, J.
State Farm appeals a final declaratory judgment in favor of Gary and Joellen Parrish as Personal Representatives of the Estate of Bradley Parrish. State Farm claims the trial court erred in finding that stacking uninsured motorist coverage was available to the Parrishes under their State Farm policy. The issue is whether the Parrishes knowingly selected non-stacking uninsured motorist insurance coverage, or, more specifically, whether State Farm met its burden of proving a non-stacking election.
Bradley Parrish was killed by an underinsured motorist in an automobile accident in 1999. Eight years before, in 1991, his parents, Gary Parrish and Joellen Parrish, had purchased an initial automobile policy from State Farm containing $100,000/$300,000 in bodily injury limits. The policy did not provide for stacking and limited uninsured bodily injury to $25,000/$50,000. The policy was renewed annually until the accident. While the Parrishes' policy also provided for $25,000/$50,000 underinsured motorist coverage, the lower court found it was impossible to tell definitively from the uninsured motorist (UM) form Mr. Parrish executed in 1991, whether or not he chose to reject "stacking" UM coverage.
The evidence at trial revealed that the Parrishes went to Eric Ponce's State Farm agency to procure insurance coverage after they moved from Broward County to Brevard County in 1991. When Mr. Parrish explored his insurance options, he learned that his move would entitle him to a 40 percent savings on his annual insurance costs. The Parrishes both testified that their primary concern was to procure the same kind of "full coverage" they had possessed in Broward County, and that cost was not an issue. Eric Ponce's employee, Pearl Wentz, met with Mr. Parrish. Unfortunately, long before Bradley Parrish's death, Ms. Wentz herself passed away. However, Mr. Ponce testified that he had overheard her meeting with clients, and that he believed she likely would have discussed UM coverage with Mr. Parrish. Mr. Ponce's knowledge of the transaction *549 was based on the office policy and his belief that Ms. Wentz obtained a knowing waiver from/with the plaintiff; Mr. Ponce never spoke to the Parrishes directly about their insurance needs. "Stacking" UM coverage, as Mr. Ponce conceded, was not tremendously more expensive than "non-stacking" coverage.
The real issue in this case boils down to the way in which the application form, filled out in 1991, is checked and whether the check mark creates an ambiguity. The trial court says it does. We disagree.

Standard of Review
When the interpretation of an insurance contract is in question, the applicable standard of review is de novo. Allstate Ins. Co. v. Rush, 777 So.2d 1027, 1029 (Fla. 4th DCA 2000).
Several rules for insurance policy interpretation were stated in Roberts v. Florida Lawyers Mutual Insurance Co., 839 So.2d 843 (Fla. 4th DCA 2003):
The scope and intent of insurance coverage is defined by the language and terms of the policy. In construing an insurance policy, the court should read the policy as a whole, giving every provision its full meaning and operative effect. Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and another limiting coverage."
Id. at 845 (citations omitted).
Larusso v. Garner, 29 Fla. L. Weekly D388, D389, ___ So.2d ___, ___, 2004 WL 396604 (Fla. 4th DCA Feb. 11, 2004).
Admittedly, this case is unique because the alleged ambiguity is not in the language of the form, but in the manner in which the form is filled out.

Analysis
Section 627.727, Florida Statutes (1991), requires that all motor vehicle liability insurance policies that provide bodily liability coverage include uninsured motorist coverage. Under section 627.727(1), the amount of UM coverage is equal to the amount of bodily injury liability purchased by an insured, unless the insured rejects UM coverage or selects lower limits of UM coverage. See Chmieloski v. Nat'l Union Fire Ins. Co., 563 So.2d 164, 166 (Fla. 2d DCA 1990). An insured may reject such coverage in writing, and the insured's written rejection constitutes a prima facie showing that uninsured motorist coverage does not apply. Long v. Prudential Prop. & Cas. Ins., 707 So.2d 390, 391 (Fla. 5th DCA 1998) (citing Jackson v. State Farm Fire & Cas. Co., 469 So.2d 191, 193 (Fla. 2d DCA 1985)). With regard to the rejection or selection of UM coverage, section 627.727(1) specifically provides:
The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12 point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. *550 Absent exigent circumstances such as forgery, fraud, or trickery, the insured is deemed to be bound by his signature on an informed rejection form. Long, 707 So.2d at 391; Nationwide Mut. Fire Ins. Co. v. Kauffman, 495 So.2d 1184, 1187 (Fla. 4th DCA 1986).
Here, the insured, Mr. Parrish, signed an approved uninsured motorist coverage rejection/selection form. However, when the trial court determined that the manner in which the form was completed created a patent ambiguity on its face, State Farm was unable to take advantage of the conclusive presumption of waiver in the statute.
The uninsured motorists rejection/selection form provides:
SELECTION/REJECTION OF COVERAGE
Florida Law requires that motor vehicle liability policies include "stacking" Uninsured Motorist coverage, unless you select "non-stacking" coverage. The selected coverage must be at limits equal to the Bodily Injury coverage limits in your policy unless you select lower limits of coverage. You also have the right to reject Uninsured Motorist coverage.
[ ] 1. I hereby reject Uninsured Motor Vehicle Coverage.
[ ] 2. I hereby select Uninsured Motor Vehicle Coverage with one or more of the following reductions:
[ ] a. I reject the stacking form of coverage and select the non-stacking form of coverage.
[ ] b. I select limits of $__/__ which are lower than my Bodily Injury Liability limits.
Our review of the form, attached as an exhibit to this opinion, shows the check mark was in box 2a., and not in between boxes 2a. and 2b., with part of the X lying in both boxes. Box 2b. is not checked but the numbers 25,000 and 50,000 are selected as the lower limits of bodily injury protection. The trial court found that the form, as filled out by the parties, had a patent ambiguity on its face because both boxes 2a. and 2b. would have to have been checked for the coverages listed in the policy ($25,000/50,000 uninsured bodily injury limits). This is not the case.
Apparently, this misunderstanding resulted in an incorrect interpretation of the form and caused the trial court to conclude that an ambiguity existed. The trial court said:
I notice that Plaintiffs' Exhibit One has Block 2 checked, which says, I hereby select uninsured motorist, uninsured motor vehicle coverage with one or both of the following rejections. Then there follows two boxes, A and B. One which rejects stacking, the other selects lower limits. Only one of those two boxes is checked.
That's patent ambiguity on the face of the form, because in order to issue this policy that State Farm issued, both of those blocks would have had to have applied. There is no indication in this form, as a matter of fact, that both blocks were selected.
* * *
So, I do find that there is an ambiguity in the election form, because both boxes are not checked. And indeed, it is unclear as to whether Box A or Box B or both are indicated. I, therefore, find that because there is an ambiguity in the form, it is not a valid election form.
We therefore reverse the trial court's entry of declaratory judgment in favor of the Parrishes, which found stacking uninsured motorist coverage available under their insurance policy with State Farm. The trial court erred in finding a patent ambiguity on the face of the Florida Uninsured Motor Vehicle Coverage-Selection/Rejection Form. State Farm was entitled *551 to rely upon Mr. Parrish's signature on the form as a conclusive presumption of the Parrishes' knowing and voluntary waiver of stacking UM coverage.
REVERSED.
PETERSON and GRIFFIN, JJ., concur.